Lawrence CALLANAN, Appellant,

v.

UNITED STATES of America,
Appellee.

Carl BIANCHI, Appellant,

v.

UNITED STATES of America,
Appellee.

L. A. THOMPSON, Appellant,

v.

UNITED STATES of America,
Appellee.

William POSTER, Appellant,

v.

UNITED STATES of America,
Appellee.

R. M. SECOR, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 15139–15143.

United States Court of Appeals
Eighth Circuit.

June 3, 1955.

Rehearing Denied July 5, 1955.

172

Thurman Arnold, Washington, D. C., and Morris A. Shenker, St. Louis, Mo. (Sidney M. Glazer, Mark M. Hennelly, Harry H. Craig, Wiley, Craig & Armbuster, St. Louis, Mo., Philip A. Foley, William J. Hough, Clayton, Mo., and Arnold, Fortas & Porter, Washington, D. C., were with them on the brief), for appellants.

Forrest Boecker, Asst. U. S. Atty., Clayton, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., and Tom DeWolfe, Special Asst. to the Atty. Gen., were with him on the brief), for appellee.

Before SANBORN, COLLET, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The appellants, Callanan, Bianchi, Thompson, Poster, and Secor, who were defendants below and will hereinafter be designated as defendants, appeal from conviction, judgment and sentence upon an indictment in two counts charging each of them with conspiracy to extort and the substantive offense of extortion, the indictment being based upon Title 18, section 1951, U.S.C., known as the Hobbs Act or the Anti-Racketeering Act. The extortion charged was obtaining $28,000 from the Burden Construction Company, paid by reason of Burden's fear of economic loss. The Burden Construction Company was engaged in several pipe line construction contracts in Missouri, which the indictment alleges involved interstate commerce. Defendants were labor representatives of various crafts supplying labor to the construction project.

Defendants in their brief set out in 15 divisions the reasons why they contend they are entitled to a reversal. As rearranged and summarized, the errors claimed are:

1. Overruling of motion of each defendant for acquittal.

2. Failure to give defendants' requested instruction as to application of section 6 of the Norris-LaGuardia Act, 29 U.S.C.A. § 106.

3. Refusal to give requested instructions concerning difference between Anti-Racketeering Act and Taft-Hartley Act, 29 U.S.C.A. § 141 et seq.

4. Overruling of defendants' contention that the Anti-Racketeering Act is invalid for the reason that the extortion definition is too indefinite.

5. Overruling of defendants' various motions for transfer and continuance.

6. Improper admission of Government's evidence.

7. Wrongful exclusion of defendants' evidence.

8. Refusal to give requested instructions and error in instructions given.

9. Overruling motions for a new trial based on unauthorized communications between a deputy marshal and jurors.

We shall first consider defendants' contention that their motions for judgment of acquittal made at the close of the evidence should have been sustained.

We have recently considered many of the problems arising under the Hobbs Act. Hulahan v. United States, 8 Cir., 214 F.2d 441; Bianchi v. United

States, 8 Cir., 219 F.2d 182, certiorari denied 75 S.Ct. 604. In the cases just cited we have answered many of the contentions raised by the defendants on these appeals. There is ample evidence in the record to support a finding that commerce was obstructed and affected. In the Bianchi case we rejected the defendants' contention that the Taft-Hartley Act modified the Hobbs Act so as to make the later Act inapplicable to labor representatives. In the Bianchi case we also held that "fear" as used in the extortion definition of the Hobbs Act would include fear of economic loss.

The defendants urge that they are entitled to an acquittal because the record shows no previous labor trouble attributable to the defendants upon which Burden could base his claim of fear. As to this, the Government in its brief states:

"* * * There are two answers to this. The first is one which we believe it is of the highest importance to mention early in the discussion of this case. That is, that ultimately the issue in these cases is not so much the cause of the victim's fear, as it is whether or not defendants played upon that fear, in other words, made use of that fear to extort money or property. The Act with which we are concerned 18 U.S.C. § 1951, commonly known as the Hobbs Act, defines extortion as 'the wrongful use of force, violence or fear.' The issues determinative of guilt are whether the victim was fearful, whether that fear was reasonable, and whether the defendants made use of that fear."

The Government's contention appears to be sound. Extortion is defined by Title 18, section 1951(b) (2), as follows:

"The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear * * *."

In the Bianchi case we held that the word "wrongful", as used in the foregoing definition, means an illegal act, that is an act which violates the criminal laws of the United States or any State or Territory. In Nick v. United States, 8 Cir., 122 F.2d 660, at page 671, we said:

"* * * The gist of the unlawful act is extortion. Extortion involves a state of mind as an element of an offense under the Act. Unless there is some form of compulsion (either physical or fear) there is no crime under this Act. * * * It was, therefore, essential to show that such payment was under such compulsion. The existence of this compulsion might be proved in several ways but one proper way is to show the state of mind under which the committee acted. * * *"

In United States v. Sutter, 7 Cir., 160 F. 2d 754, at page 756, Judge Minton, now Justice Minton, quotes with approval the following definition of extortion:

"Extortion is defined by Webster as the ' * * * act or practice of taking or obtaining anything from a person by illegal use of fear, whether by force, threats, or any other undue exercise of power * * *.' Webster's New International Dictionary, Second Edition, Unabridged (1942)."

In United States v. Compagna, 2 Cir., 146 F.2d 524, at page 529, in discussing the admissibility of evidence to show the fear in the minds of the victims, the court, although finding that no direct threats of violence were made and that there was no evidence that any of the defendants had been involved in previous strikes, goes on to hold that in any event the admission of evidence of the victims' fears was not prejudicial, saying:

"* * * The victims' fears originated from acquaintance with the general disorders and violence which had accompanied other strikes. As such, it was part of what everybody knows, and I cannot see how it could have prejudiced the accused with the jury. Indeed it was entirely proper for the jury to infer that the accused expected to play upon precisely such fears, when Bioff threatened to call strikes."

It appears to us that the offense of extortion under the Hobbs Act has been committed if the defendants have illegally created fear in their victim, which fear has induced the victim to part with his money or property. If the fear is created in the victim for the purpose of extorting money or property, the offense is present whether the defendants are responsible for any past difficulties in the way of prior illegal strikes or unfair labor practices which may have created the fear, or whether the fear may have been created by what might have happened to others in similar cases. As above stated, in the Compagna case, there is no indication that the fear complained of was created by any illegal action of the defendants prior to the extortion. We approved the language hereinabove quoted from the Compagna case in the Bianchi case. The Anti-Racketeering Act does not curtail any legitimate labor activities. The court on this issue properly instructed the jury as follows:

"The anti-racketeering statute under which the charges are based has no reference or bearing on action by a labor organization leader, honestly acting and representing members of his organization. It has reference to and bears on interference with interstate commerce by the compulsory payment of money extorted by a labor leader for his own individual enrichment. The act clearly is protective to labor organizations, and labor members, and their membership, as it is to employers."

If fear was created in the victim's mind, if such fear was a reasonable one, and if the defendants by making use of that fear extorted money or property, the foundation for guilt is established. In the Bianchi and Hulahan cases there were express threats that if the money was not paid labor difficulties would follow. In this case we find no evidence of a direct threat. Burden's testimony is that he was invited to lunch by Callanan, which invitation he accepted, and that at such private luncheon at which no others were present the following conversation was had:

"I related to Callanan that we had sustained terrific losses on the Platte line. * * * And that something drastic had to be done, if we were going to complete the other [Sinclair] line without greater loss. * * * And I told him that the stewards would have to be working stewards, and that just a whole lot more progress would have to be made. That there had been so much trouble up there, that we were fearful of two or three things: First, loss financially; second, was danger to our men; third, damage to our property. I told Callanan that this would all have to be changed.

"Callanan asked me then how much money we had in this, how much—would I estimate we were going to make on this job. I told Callanan that that would be hard to answer, so many things depends on something like that, and he said, 'Well would there be a cent a foot in that' for their press. I told him that according to the—although I did not have a full knowledge of the exact footage in the line, that I estimated it would be something like 28 to maybe 29 thousand dollars at a cent a foot and this amount of footage. Callanan then said, 'How about $29,-000?' I told him that was * * * high, steep, too much. I then told him that we would pay $28,000 and if the job was good enough and there was enough profit, I would add a thousand to that, after the job was completed with profit.

"I then asked him if the other crafts would share proportionately. Callanan said they would not be the same, because he thought that the welders had the greater part of the job, and that on the work that we had done for the Platte, they had not interfered or handicapped us, as had the other crafts. He didn't tell me at that time just what the proportion was to be.

"I then told Callanan that . . he would have to render invoices to cover these amounts. Then he asked me if it would be all right for those invoices to read 'Materials and Equipment.' I told him this would be satisfactory, but must have an invoice.

"I further told Callanan that this payment would not be made until after substantial portions of the work was done, so that we were paid for some of the work. And the last payment would be made after all the work was done completely. And he said this satisfactory.

"We talked about the job then, in general, and I again stressed the point that we had suffered these losses; and we then finished our lunch and went back to the original meeting."

Callanan as a witness denied ever having any private conversation with Burden at the luncheon or elsewhere, and denied ever having the conversation related by Burden. In the Hulahan case, supra, 214 F.2d at page 442 we stated:

"It is elementary that in reviewing the question of the adequacy of the evidentiary basis for a verdict of guilty, this Court must take that view of the evidence which is most favorable to the Government and give to the Government the benefit of all inferences which reasonably can be drawn from such evidence. * * This is saying no more than that a jury verdict, whether factually right or wrong, is conclusive upon this Court if sustained by substantial evidence or by permissible inference drawn therefrom. * * * "

The jury was warranted in accepting Burden's version of the conversation. There also was evidence in the record to the effect that the defendants were the labor representatives in the territory where Burden was operating. We believe that it was possible and proper in the light of all the evidence for the jury to infer Burden feared that if the tribute demanded was not paid reprisals would be taken and labor difficulties designed to harass the employer and not to accomplish legitimate labor objectives would follow, and that fear on the part of Burden was reasonable and justifiable, and that because of such fear the money was paid. There is in the record ample evidence from which the jury could find that the tribute of $28,000 was paid, and that a share of the proceeds reached each of the defendants. The payments were made through invoices for rental of equipment never furnished and for supplies never furnished, and were paid by Burden at the direction of the various defendants.

■ Defendants urge that the failure of the court to give their requested instruction as to the applicability of section 6 of the Norris-LaGuardia Act, 29 U.S. C.A. § 106, was error. As to the extortion itself there is evidence which would warrant the jury in finding that what was done by Callanan was authorized and ratified by his co-defendants. There is evidence that each received his agreed portion of the money paid. As to such matter, each defendant was acting in his individual capacity and not as a representative of his union. We held in the Bianchi case under such circumstances there was no error in refusing to give the requested instruction.

In this case considerable evidence was offered in an attempt to show that the defendants were responsible for past illegal labor activities in connection with the Burden contract for the prior year. Burden summarizes his complaints as follows:

"We wanted the stewards to work; we wanted a better brand of weldings; we wanted more work per day, per man. Those were the three most important points."

Defendants strenuously contend that they were not shown to have been guilty of unlawful acts on the Burden job of the prior year. We agree with this contention. Section 6 of the Norris-LaGuardia Act, 29 U.S.C.A. § 106, provides:

"No officer or member of any association or organization, and no asso-

ciation or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the *unlawful* acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." (Emphasis supplied.)

We have heretofore found that no unlawful acts in connection with the prior contract have been proven. Consequently, it would seem that the Norris-LaGuardia Act does not apply. Defendants in their reply brief state:

"The only theory under which the failure to give the Norris-LaGuardia instruction can be condoned is the broad interpretation given at the outset of the Government's brief. Unless that theory be adopted by this Court it must reverse."

We have upheld the Government's broad interpretation of the Act. The issue of the necessity of giving the Norris-LaGuardia instruction because of the evidence of prior labor difficulties presents a rather close question. We do not believe the court committed error in refusing to give the requested instruction. In any event, we are convinced under the record that no prejudicial error has been shown. See United States v. Compagna, supra, 146 F.2d at page 529.

■ The record in this case on the issue of failure to give requested instructions concerning the difference between the Anti-Racketeering Act and the Taft-Hartley Act is similar to that in the Bianchi case, and for the reasons stated in the Bianchi case, 219 F.2d at page 192, we hold that this assignment of error is without merit.

■ We hold defendants' contention that the Anti-Racketeering Act is invalid for the reason that the extortion definition is too indefinite is not established for the reasons assigned for rejecting an identical contention in the Bianchi case, 219 F.2d at page 196.

■ The defendants made various motions for transfer and continuance including such a motion made immediately before the trial commenced. The record in support of such motions is very extensive, and is similar to that made in the Bianchi case, supra, except here one grand jury report was filed six days prior to the commencement of the trial. This grand jury report contains no specific reference to this case nor are the defendants herein specifically named. The defendants contend that such grand jury reports are unauthorized by law, and to support their contention cite section 6(e), Federal Rules of Criminal Procedure, 18 U.S.C., and Application of United Electrical Radio & Machine Workers, D.C.S.D.N.Y., 111 F.Supp. 858. We are not here directly confronted with the issue of the propriety of such reports. We are primarily concerned with the effect of the wide publicity given this and similar cases on defendants' ability to obtain a fair trial jury. Rule 21(a) of the Federal Rules of Criminal Procedure provides for a transfer on motion of defendant to another district or division when the court is satisfied that there exists so great a prejudice that the defendant can not have a fair and impartial trial in his own district. We have uniformly held that in the determination of questions of transfer and continuance the trial court is vested with a wide discretion. Finnegan v. United States, 8 Cir., 204 F.2d 105; Bianchi v. United States, supra. In this case the trial court carefully examined the prospective jurors and asked the jurors all questions submitted by defendants' counsel and carefully cautioned the jurors to disregard all extraneous matters. We can not say under this record that the trial court abused its discretion in denying the motions for transfer and continuance.

■ Many errors in the admission of evidence are urged. Some of these relate to the Blackwell incident. Several months prior to the Callanan-Burden conversation, Blackwell, a Burden employee, was beat up by some workmen who were unable to get immediate em-

ployment. There was evidence that these men had been sent by Thompson, and that Thompson after the assault came over and prevailed upon Blackwell to withdraw charges Blackwell had filed against his assaulters. The evidence also shows that this incident was reported to Burden and caused him concern. This evidence was admissible as bearing on the reasonableness of Burden's fears. Bianchi v. United States, supra; Compagna v. United States, supra. The court limited the consideration of this testimony as follows:

"This evidence of this character was received solely, if at all, for the purpose of showing the state of mind, whether or not the witness O. R. Burden agreed to pay, first, $28,-000.00, and did pay it under fear of economic loss and under fear of injury to his men, and under fear of injury to his equipment. It is not to be received or understood by you as any proof of the truth of the charges, but what effect, if any, did the conveyance of this information, whether true or not, to O. R. Burden, have on his mind?"

Objection was also made to Blackwell's testimony as to the contents of letters from Thompson given him by assaulting employees, the substance of the letters being that the bearers were to be given the best jobs available. There was no abuse of discretion in the court's determination that a proper foundation had been laid for the secondary evidence. In any event, any error would appear to be without prejudice in the light of the evidence that Thompson came down immediately after the assault and intervened in behalf of the assaulters.

 Objection was also made to testimony that stewards were appointed by Thompson and Poster, that there were too many workers, that they were lazy and inept, and that the stewards did not work. There was independent evidence that the defendants were the representatives of the various crafts working on the Burden projects. Burden in his conversation with Callanan made complaints about the excess number of workers, the quality of the work, and the fact that the stewards did no work. The defendants through Callanan had full knowledge of Burden's complaints. We do not believe that any of this evidence goes to the extent of establishing that any illegal or unfair labor practices existed prior to the alleged extortion demands. Since Burden's complaints as to past labor difficulties were summarized in his conversation with Callanan, the additional cumulative evidence as to past labor practices, even if wrongfully admitted, would not constitute prejudicial error. Finnegan v. United States, supra, 204 F.2d at page 112.

 Callanan denied any connection with the R & A Welding Supply Company and the Pipe Line Welding Supply Company. Burden had testified that Callanan received his share of money through fictitious invoices of such companies. On rebuttal contractor Potaschnick testified that he had paid off Callanan at Callanan's direction through fictitious invoices of the same companies. This testimony was relevant and competent rebuttal testimony for the purpose for which it was introduced. In Glasser v. United States, 315 U.S. 60, at page 81, 62 S.Ct. 457, at page 470, 86 L.Ed. 680, the Court said:

" * * * Trial judges have a measure of discretion in allowing testimony which discloses the purpose, knowledge, or design of a particular person. * * *"

In Brickey v. United States, 8 Cir., 123 F.2d 341, at page 344, this court said:

"The general rule is that a crime can not be established by evidence of other distinct crimes not charged in the indictment. But where intent and knowledge are essential elements of the offense charged, evidence of transactions so connected with the specific offense charged that it tends to show criminal intent or guilty knowledge is admissible. * * *"

In its instructions the court limited the Potaschnick testimony to the defendant Callanan on the substantive offense, saying:

" * * * for the purpose, if you find it does, to show knowledge or intent of defendant Callanan as to the names which appear at the head of the invoices received by the witness Potaschnick and the Burden Construction Company, being the same, and the disposition of funds paid to the two named Companies by the Burden Company, as indicated by Government's Exhibits 18 and 19."

There was no abuse of discretion in admitting Potaschnick's evidence as limited by the instruction.

Defendants claim error in the rejection of their offered testimony, and that the court improperly restricted their cross examination as to the contractor's national agreement, as to alleged tax deficiency claims against Burden, and as to various liquor purchases by Burden purported to be for inspectors, and that the court also erred in excluding testimony as to detailed bids of all contractors on the pipe line projects and a letter written by a pipe line company official to Burden analyzing Burden's loss on the pipe line project. These all pertain to collateral matters, and no abuse of discretion on the part of the court in rejecting this evidence is apparent.

The defendants likewise objected to the court's sustaining the Government's objection to the following question:

"Mr. Burden, at the time that you were making the arrangements to pay the $28,000, and at the time that you made the payments, you knew, did you not, sir, that in making those payments under the provisions of the Taft-Hartley Law that you would be guilty of the commission of a crime?"

The question obviously was improper in form in that it assumed facts not established by the evidence, and the objection to the question was properly sustained.

Numerous objections were made as to instructions given and failure to instruct. This case was tried by Judge Hulen who also tried the Bianchi case. It would un-

duly extend the length of this opinion to set out the instructions, exceptions thereto, and the requested instructions. For the most part the instructions given here are similar to those given in the Bianchi case, and the objections lodged to the instructions and failure to instruct appear to raise the same issues. We have answered the defendants' objections to the instructions sufficiently by what we have said in the Bianchi case.

An additional objection is made here that the court's instructions were argumentative and incorporated an unfair comment upon the evidence. Under federal procedure the trial judge is more than an umpire. In Buchanan v. United States, 8 Cir., 15 F.2d 496, 498, the following guide is set out for determining questions such as we have here:

" * * * Under the rule, as stated and applied by the Supreme Court, it seems that, when a judge expresses his opinion as to the facts to the jury, making it clear that it is nothing but his opinion, and not binding upon them in any way, and that it is their duty and responsibility to determine all of the facts, he is within his rights, and that he is only subject to reversal when his comments upon the evidence or opinion as to the facts amount to partisan argument or advocacy, or constitute an appeal to passion or prejudice. It is unquestionably true that, because of the judge's influence with the jury, the right which he has to express his opinion as to the facts should be sparingly, carefully, and wisely used. At the same time, because of his participation in the actual trial of the cause, he is better able to tell when the use of that right is justified than is an appellate court from reading the cold record. After all, jurors are men with minds of their own, and, where they are given to understand that the responsibility for determining the facts is upon them, they do not generally act against what they believe to be right and just. * * * "

See also Myres v. United States, 8 Cir., 174 F.2d 329, 337; McCoy v. Blakely, 8 Cir., 217 F.2d 227, 233.

In the present case the court fully advised the jury that it was the jury's province to determine all disputed fact issues and that the jury was not bound by any expression of opinion by the court. We have carefully read and considered the instructions as a whole, and find that they are not vulnerable to the objection that the court's comments amount to partisan argument or advocacy.

■ Finally, it is urged that the court erred in overruling defendants' motion for a new trial based on misconduct in connection with jury deliberations and in unduly restricting cross examination of jurors. An affidavit was filed that Mrs. Naeger, one of the jurors, told a Mrs. Kruger that while the jury was being taken to dinner during deliberations a deputy marshal, in reply to a juror's remark that it looked like a hung jury, stated that there could not be a hung jury in federal court and that jurors would be confined until they reached a decision. The court held a hearing on this issue, affording all interested persons an opportunity to be present. All jurors except one out of the State were examined and all including Mrs. Naeger denied hearing the alleged hung jury statement. In Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654, the Court held that a public hearing must be had to investigate any complaint of an unauthorized communication with a juror. The Court states the rule as to communications to be, 347 U.S. at page 229, 74 S.Ct. at page 451:

"In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. Mattox v. United States, 146 U.S. 140, 148–150, 13 S.Ct. 50, 52–53, 36 L.Ed. 917; Wheaton v. United States, 8 Cir., 133 F.2d 522, 527."

The only competent evidence at the hearing was evidence pertaining to extraneous interference with a jury verdict. In Wheaton v. United States, 8 Cir., 133 F.2d 522, at page 526, this court said:

"The issues raised by the motion for a new trial were: (1) What communications were made to the jury by the bailiff? (2) Were they prejudicial or harmless? These issues were to be determined by the trial court from competent evidence. In so far as the affidavit of any juror attempted to impeach the verdict of the jury, or related to a matter resting in his personal consciousness or to the motives or influences which affected the jury's deliberations, the affidavit was incompetent, and it was only competent to indicate the existence of extraneous interference with the jury's deliberations. * * *"

See also Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917. The court held a fair hearing. It permitted full exploration of any communications between the jurors and outsiders. At the conclusion of the hearing the court made the following finding:

"Under this record we find: (1) that the only communication made to the jury during deliberation was that in the event of a hung jury those defendants on bond would be continued on bond; that the communication by the lady Deputy Marshal was without substance; (2) that the remarks or statements of neither Deputy Marshal, standing alone or coupled with the questions to which they replied, were preju-

dicial to either of the defendants; (3) that there is no competent evidence to sustain the allegations of paragraph 86 of the motion for new trial; (4) that the affidavit, as well as testimony, offered to impeach the juror Naeger is incompetent."

The court did not commit any error in conducting the hearing on the issue of communication with outsiders, and we believe its findings, hereinabove set out, are fully supported by the record. We find no merit in this assignment of error.

We have carefully considered the entire record and all errors urged by the defendants. We find that no reversible error has been shown. The defendants have had a fair trial.

The judgments and sentences are affirmed.