**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond KENNEDY, Benjamin Kasprzak and Joseph Kasprzak, and James Alvanos, Defendants-Appellants.**

**No. 342, Docket 26663.**

United States Court of Appeals Second Circuit.

Argued May 11, 1961.

Decided June 20, 1961.

Henry A. Lowenberg, New York City, for defendants-appellants Raymond Kennedy and James Alvanos.

Jacob P. Lefkowitz, New York City, for defendants-appellants Benjamin Kasprzak and Joseph Kasprzak.

Daniel P. Hollman, New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, New York City, Atty. for the United States; Daniel P. Hollman and Irving Younger, Asst. U. S. Attys., New York City, of counsel), for plaintiff-appellee.

Before FRIENDLY and SMITH, Circuit Judges, and WATKINS, District Judge.*

FRIENDLY, Circuit Judge.

Raymond Kennedy, Benjamin and Joseph Kasprzak, and James Alvanos appeal from a judgment of the District Court for the Southern District of New York convicting them upon a jury verdict. The indictment, filed April 11, 1960, contained 182 counts. The first 181 charged substantive violations of the Hobbs Act, 18 U.S.C. § 1951, at various dates going back to April 1, 1955; the last charged a conspiracy to violate it, beginning in 1952 and continuing up to the date of the indictment. All four defendants were named in the conspiracy count. Of the substantive counts, the first 152 charged Kennedy with obstructing interstate commerce by extorting money on particular interstate shipments of meat products and counts 153–176 and 177–181 charged Benjamin and Joseph Kasprzak respectively with similar crimes. Alvanos was not named in the substantive counts.

The trial began on August 23, 1960 and continued until September 21. At the conclusion of the government's case, 41 substantive counts were dismissed on the government's motion. After an afternoon's deliberation, the jury found the defendants guilty on all counts that had been submitted to it. The Court sentenced Kennedy to 15 years imprisonment, Benjamin Kasprzak to 10 years and Joseph Kasprzak to 7½ years, on each count on which they had been convicted, the sentences on the various counts to be served concurrently. Alvanos was sentenced to 10 years on the conspiracy count.

■ Appellants' claim of insufficiency of the evidence is so utterly frivolous that it would not warrant mention save for the bearing that its answer has on other aspects of the case. The evidence fairly "shrieks the guilt of the parties,"

Lutwak v. United States, 1953, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593. The charge was that drivers, hauling carcasses of hogs from the midwest to packing plants in New York, Jamaica and Brooklyn, were met at the packing plants by defendants, who insisted, by actual or threatened force or violence, on being paid an unloading fee. There was abundant testimony as to actual violence, as to the display of knives and blackjacks, and as to threats of physical violence and of delay in unloading and consequent spoilage. The only defense offered was an attempt, which the jury could only have regarded as feeble in the extreme, to show that defendants actually performed services in carrying meat off the trucks, for which the Teamsters Union required that they receive a day's pay.

■ The Court allowed various drivers who had paid the defendants to testify to conversations with other drivers concerning threats defendants had made to the latter, instructing the jury in each instance that the evidence was admitted not as proof of the facts but to show the victims' state of mind. Proof of the state of mind of the victim is relevant, indeed essential, to a prosecution for extortion, and this may be evidenced by the victim's own testimony at the trial, Bianchi v. United States, 8 Cir., 1955, 219 F.2d 182, 192 or, pursuant to a recognized exception to the hearsay rule, 6 Wigmore, Evidence (1940 ed.), § 1730, by statements made by him to others. Here a considerable number of the informants themselves testified, as they did in United States v. Varlack, 2 Cir., 1955, 225 F.2d 665, 673, United States v. Palmiotti, 2 Cir., 1958, 254 F.2d 491, 497, and United States v. Stirone, D.C.W.D. Pa.1957, 168 F.Supp. 490, 497, affirmed 3 Cir., 1958, 262 F.2d 571, reversed on other grounds, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. We all agree that in such instances the evidence was properly admitted; indeed, in these instances,

---

* United States District Judge for the Northern and Southern Districts of West Virginia, sitting by designation.

the limiting instruction was more favorable than defendants deserved. However, there were also instances where the victim's informant was not called and some where he was not even named.

My brothers think that even that testimony was properly received for the limited purpose stated by the judge, although a trial court would have discretion to refuse such evidence where its usefulness to show the victim's state of mind was outweighed by its likely prejudicial effect on the jury, 31 C.J.S. Evidence, § 159, and cases cited, and the victim was himself available to testify as to his state of mind; they believe there was no abuse of discretion in receiving the evidence here.

In my view it was error to receive evidence of threats to informants not called as witnesses, even to prove the victim's state of mind; for his state of mind is irrelevant unless it springs from action by the defendant and the hearsay rule forbids the use of the informant's statement to show that this had occurred. Where the sole evidence offered by the prosecution in an extortion case was a victim's testimony that he had paid money to the defendant because numerous other persons, not called as witnesses, had told him of threats by the defendant under similar circumstances, I should suppose a court would reverse for violation of the hearsay rule and not, as my brothers think, for insufficiency of the evidence; if that be so, I cannot see it is any the less error to receive such evidence where the testimony of threats to informants not called as witnesses is merely superimposed upon testimony as to fear caused by threats to informants who were so called or to the victim himself. None of the cases cited by the Government, save possibly Nick v. United States, 8 Cir., 1941, 122 F.2d 660, 670–671, 138 A.L.R. 791, supports the admission of such testimony, and even that is doubtful since Kaimann, the "third person" there, had himself been on the stand, had testified to his remark to the victim and had at least been subject to cross-examination as to what lay behind it even if he had not spelled this out. In United

States v. Compagna, 2 Cir., 1944, 146 F.2d 524, the issue was whether witnesses who testified to payments under threat of strikes might also say they had been moved to pay by fear of violence during the strikes, such as had been encountered in the past; their testimony related to their own previous experiences at the defendants' hands, as to which they were subject to cross-examination. There was thus no hearsay issue; the question was whether such testimony, which all agreed would be admissible on substantive charges, was also receivable where the sole charge was conspiracy. However, and here is where it is important that the proof in this case was merely cumulative, what I consider the error in receiving this evidence does not call for reversal, since the Government's case had been proved to the hilt without it and, as the sentences were concurrent, there is no need to analyze the transcript, of over 3000 pages, to determine whether this is so as to each of the 141 counts on which various defendants were convicted, Lawn v. United States, 1958, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed.2d 321; excising the evidence that I think was erroneously admitted, there was overwhelming proof on the conspiracy count and on many substantive counts as well. It is quite impossible to believe, for example, that the jury which had heard a victim tell how Kennedy "jumped on the trailer and started throwing the carcasses, pigs, down on the street," and how on another occasion "Benny popped me in the neck and knocked me down on my knees," at the same time imparting the cheering information "Smart guys like you come up here popping off your mouth is likely to find themselves floating down the river," would have found much had been added by the victim's testimony of what others drivers had told him.

 The serious question raised by appellants is whether reversal is required because of remarks by the judge during the trial. The prevailing atmosphere was, indeed, unfortunate; there was altogether too much altercation between the judge and defense counsel. If the incidents were to be considered alone, as

**460**

they appear when assembled in some seventy typewritten pages of appendix to appellants' briefs, we should deem it our duty to reverse, as our colleagues in the First Circuit have recently done, Killilea v. United States, 1 Cir., 1961, 287 F.2d 212, 216, even though many of the episodes were in no small measure provoked by defense counsel and they were not so grave as in the case cited. However, quite a different impression of the importance of these incidents is formed when the 3000 page transcript of the month long trial is read as a whole. Moreover, this was not a case where there was a sharp factual issue, as in United States v. DeSisto, 2 Cir., 1961, 289 F.2d 833; defendants had not testified and the only issue of fact was whether the jury would disbelieve prosecution witnesses whose testimony had not been challenged in any effective way. Under all the circumstances we do not believe reversal to be required, 28 U.S.C. § 2111.

Affirmed.