**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Robert E. CROWLEY, Defendant-Appellant.**

**No. 73–1437.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1973.

Decided Sept. 30, 1974.

James R. Thompson, U. S. Atty., Gary L. Starkman and Michael D. Monico, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and POOS,* Senior District Judge.

POOS, Senior District Judge.

Defendant, Robert E. Crowley, was indicted in a one count indictment for violation of the Hobbs Act, 18 U.S.C. Sec. 1951.[1] Following a trial by jury, defendant was found guilty and sentenced to two years imprisonment. This appeal follows that conviction.

Jack David and Jerome Morris, hereinafter referred to as David and Morris, were the proprietors of the Bryn Mawr Bowling Lanes located in Chicago's south side. In recent years their business, which was located in a racially changing area, had experienced numerous thefts and violent disturbances. The proprietors soon discovered that without sufficient police protection they were unable to properly and profitably continue their business enterprise. It is within this factual milieu that defendant, a police officer for the Chicago Police Department, enters.

In the fall of 1971, David and Morris were separately introduced to defendant Crowley by another unidentified policeman who had been receiving pay-offs from the two men. Crowley was introduced to each of the alleged victims as the man who would continue to collect the monthly pay-offs. Subsequently, the proprietors paid one hundred dollars ($100) per month from November, 1971 to April, 1972, on approximately the fourteenth (14th) of each month. The man-

---

Michael J. Guinan, Chicago, Ill., for defendant-appellant.

* Honorable Omer Poos, Senior District Judge for the Southern District of Illinois, is sitting by designation.

1. The act reads, in pertinent part, whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both . . .

The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear or under color of official right.

ner of payment involved either of the two men writing a check for the designated amount, cashing it, and then giving the sum of money to defendant when he entered the premises.

Defendant admitted to having received the money but contended that it was voluntary remuneration for services rendered to the alleged victims, i. e., providing security for the premises while on and off duty. The record further discloses, however, that defendant never performed, nor was asked to perform any services for David or Morris. Officer Crowley never personally arrested or caused anyone to be arrested on the bowling establishment premises. Oft times the alleged victims complained that they were not receiving adequate police assistance when needed. Crowley reassured David and Morris and indicated that their complaint would be remedied. The proprietors testified, however, that the only time they ever observed defendant during the period in question was when he collected the payments.

Finally, on April 14, 1972, the aforementioned relationship between the proprietors and defendant ended. On that morning Agent Noble of the Federal Bureau of Investigation handed David five twenty dollar bills, which he had previously photostated. Subsequent thereto, defendant entered the bowling alley and encountered David. David complained that despite the payments adequate police protection was not being afforded; defendant assured David that the service would improve. It was during this conversation that David gave the five twenty dollar bills to defendant, who placed them on his person. As defendant Crowley exited the premises he was apprehended by Agent Noble, who in comparing the bills in Crowley's possession found them to correspond to those previously given David. Defendant's trial and conviction stemmed from this arrest.

2. Hobbs Act, 18 U.S.C., Sec. 1951.

3. In part the statute reads,

Defendant's first contention on appeal is that the government's evidence of extortion was insufficient to sustain a conviction under the Hobbs Act, 18 U.S.C., Sec. 1951.[1] In support thereof, defendant argues that while the evidence may support a charge of bribery, it wholly fails to prove a crime of extortion in that there was no indication that Crowley's actions engendered a reasonable fear of harm in the minds of the alleged victims. In essence, defendant alleges that it was necessary for the government to prove not only that defendant obtained the property of another, with his consent, while acting "under color of official right" but also within the "wrongful use of actual or threatened force, violence, or fear."[2]

In setting forth such an exposition, defendant clearly misreads 18 U.S.C., Sec. 1951 and the case law pertinent thereto. Even a cursory reading of the statute reveals that it is phrased in the disjunctive.[3] Furthermore, United States v. Kenny, 462 F.2d 1205 (3rd Cir. 1972), supports this interpretation,

(While) private persons may violate the statute only by use of fear and public officials may violate the act by use of fear, persons holding public office may also violate the statute by a wrongful taking under color of official right. . . . The "under color of official right" language plainly is disjunctive. That part of the definition repeats the common law definition of extortion, a crime which could only be committed by a public official and which did not require proof of threat, fear, or duress. 462 F.2d at 1229.

This holding comports with the Supreme Court's concept of common law extortion. In United States v. Nardello, 393 U.S. 286, 289, 89 S.Ct. 534, 536, 21 L.Ed.2d 487 (1969), the Court discussed the meaning of extortion in the Hobbs

The term "extortion" means the obtaining of property from another . . . *or* under color of official right. Emphasis added.

Act's companion statute, 18 U.S.C., Sec. 1952. It stated:

> At common law a public official who under color of office obtained the property of another not due either to the office or the official was guilty of extortion. In many States, however, the crime of extortion has been statutorily expanded to include acts of private individuals under which property is obtained by means of force, fear, or threats.[4]

■ With reference to the foregoing analysis it appears that the jury in the instant case was warranted in finding that defendant committed extortion "under color of official right." The jury was properly instructed on this facet of the extortion statute.[5] Furthermore, the evidence taken in the light most favorable to the government,[6] established that Crowley obtained money to which he was not entitled while in uniform and in the performance of his official duties. Defendant was introduced to the proprietors as the man who would collect the pay-offs. Crowley performed no services for David and Morris, and they expected non of him. The evidence was therefore sufficient for the jury to conclude that it was defendant's uniform—his office—that induced David and Morris to make the payments.

Defendant has cited numerous cases which stand for the proposition that fear or duress is a necessary element for the crime of extortion. United States v. Hyde, 448 F.2d 815 (5th Cir. 1971), cert. denied, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745, is the authority predominantly relied upon for this proposition. *Hyde,* however, did not explicitly deal with the "under color of official right"

aspect of the Hobbs Act and therefore is clearly distinguishable,

> There was evidence in this case to support a finding that the defendants coerced companies into paying fees in order to avoid harmful legal action. In some cases explicit threats were made. 448 F.2d at 833.

It is apparent that the Court in *Hyde* was not concerned and did not decide the issue relevant to the resolution of the instant case.

As to the remaining authorities cited by defendant, suffice it to say that they concerned private, not public participants in the crime of extortion and therefore are inapposite.[7]

■ This Court need not solely rest upon the above rationale to support the jury's finding in the instant case. The evidence contained in the record, both direct and circumstantial, proved that the proprietors of the Bryn Mawr Bowling Lanes paid defendant because they feared if adequate police protection was not provided, their business would be plagued by financial loss. It is readily conceded that the business establishment was the target of frequent incidents of vandalism and violence. David and Morris, like other businessmen in the racially changing neighborhood, were often forced to summon the police, and found, not infrequently, that assistance was slow in arriving. Hence, David and Morris were highly susceptible targets for such extortionate practices as set forth in the indictment.

The testimony reveals that another policeman, who had been collecting from the proprietors, represented that defendant would continue to collect the payments. Defendant represented to the

---

4. For further exposition on common law extortion, see, 2 Wharton's Criminal Law, Sec. 1904 (12th Ed. 1932); 4 Blackstone 141; Stern, Prosecutions of Local Political Corruption under the Hobbs Act: The Unnecessary Distinction Between Bribery and Extortion, 3 Seton Hall L.Rev. 1, 17 (1971).

5. Extortion under color of official right by a law enforcement officer need not involve force or threat. If a victim reasonably feels

compelled to pay money to a law enforcement officer, because of that officer's wrongful use of his official position for the purpose of obtaining money, the requirements of the crime of extortion under color of official right are satisfied.

6. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

7. United States v. Nardello, *supra,* 393 U.S. at 289, 89 S.Ct. 534.

victims that he would arrange for improved police service. David and Morris obviously recognized that if adequate police service was not forthcoming the spectre of financial ruin would become an immediate reality. It is important to note that it is unnecessary for the government to prove that defendant actually created the fear in the minds of his victims. Rather, as the Court in Callanan v. United States, 223 F.2d 171, 174–176 (8th Cir. 1955), cert. denied, 350 U.S. 862, 76 S.Ct. 102, 100 L.Ed. 764, held, the exploitation of the victim's reasonable fear constitutes extortion regardless of whether or not the defendant was responsible for creating that fear and despite the absence of any direct threats. Accordingly, Crowley was charged with extorting money through the use of economic harm,[8] the issue on which the jury heard evidence, was instructed, and reasonably could have concluded the defendant's guilt.

Defendant asserts a two-pronged attack on this aspect of the jury's adverse conclusion. Initially, defendant cites various contradictions that were revealed in the witnesses' testimony during examination at trial and relies on the issue of credibility to subvert the jury's finding. Glasser v. United States, 315 U.S. 60; 77–80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), properly repudiates defendant's proposition:

> The short answer to this is that the credibility of a witness is a question for the jury . . . It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.

There appears no reason on appeal to disturb the jury's resolution of this issue.

Secondly, defendant attempts to dispel the jury's verdict of guilt by relying upon David's and Morris's testimony that defendant Crowley always comported himself as a gentleman and never confronted them in a threatening manner. Integrally related to this proposition is defendant's contention that the proof substantiates that the money acquired from David and Morris was paid voluntarily as remuneration for services rendered. United States v. Hyde and Glasser v. United States, *supra*, are dispositive of defendant's dual faceted proposition. In addressing itself to the former, the Court need only recall the language of *Hyde*,

> The fact that relations between the victims and the extorters were often cordial is not inconsistent with extortion. 448 F.2d at 834.

As to the latter, the Court again reiterates its previous discussion on the issue of credibility on appellate review.[9]

As a second ground constituting reversible error, defendant asserts that the lower Court's proffered instruction as to extortion "under official color of right" was not a proper statement of the applicable law. In reliance thereon, defendant contends that the trial court's instruction[10] was not sanctioned either by existing case law or authoritative literature.

The Court is cognizant that this argument is merely an embellishment of the premise raised in defendant's first argument. As previously mentioned there is ample support for the trial court's instruction as to what constitutes extortion "under color of official right." An examination of both *Nardello* and *Kenny*, *supra*, compel the conclusion that the instruction was in accord with the plain reading of the statute and the common law definition of the phrase in question.

---

8. Bianchi v. United States, 219 F.2d 182 (8th Cir. 1955), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249; United States v. Sopher, 362 F.2d 523, 527 (7th Cir. 1966), cert. denied, 385 U.S. 928, 87 S.Ct. 286, 17 L.Ed. 2d 210; United States v. De Met, 486 F.2d 816 (7th Cir. 1973).

9. See also: United States v. Karigiannis, 430 F.2d 148 (7th Cir. 1970), cert. denied, sub nom., Panagiotopoulos v. United States, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141.

10. Trial Court's instruction, *supra*.

Attention should also be called to the fact that the trial judge did not give the alleged erroneous instruction until he completed comprehensive instructions explaining extortion induced by fear of economic loss and delineating defendant's theory of defense, i. e., that the payments were voluntary. The theory which defendant presently urges the Court to accept was specifically submitted for the jury's consideration [11] and decided adversely to defendant.

It is apparent from the foregoing that the instructions fairly represented the applicable law pertaining to extortion and do not necessitate reversal.

Defendant's final argument on appeal asserts that there was insufficient proof that the charged acts affected interstate commerce under the Hobbs Act.[12] It was stipulated by counsel at trial that if the Products Manager of the Brunswick Corporation were called to testify, he would state that the Bryn Mawr Bowling Alley bought supplies and equipment from the Brunswick Corporation, which were manufactured outside the state of Illinois. The main thrust of defendant's argument is that the aforementioned stipulation fails to establish that defendant's conduct affected interstate commerce as per the Hobbs Act and pertinent case law.

Defendant relies upon Walling v. Goldblatt Bros., 128 F.2d 778 (7th Cir. 1942) to support his proposition. It suffices to say that the Court finds *Goldblatt* inapposite, for it did not concern a violation of 18 U.S.C., Sec. 1951 but of the Fair Labor Standards Act of 1938, 52 Stat. 1060; 29 U.S.C.A., Sec. 201 et seq. That statutory provision did not attempt to regulate activities "affecting commerce" but only those activities "in commerce." Nor are the remaining cases listed seriatim by defendant any more persuasive; none of them concerns the Hobbs Act or an equivalent penal statute.

The notion that interstate commerce cannot be "affected" once items have "come to rest" was decisively rejected by the Supreme Court in Burke v. Ford, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed. 2d 554 (1967). That case arose under the Sherman Act, which also proscribed activities having an effect on interstate commerce; the Supreme Court stated,

The District Court and the Court of Appeals found that the liquor "came to rest" in the wholesalers' warehouses and that interstate commerce ceased at that point. Hence, they concluded that the wholesalers' division of the Oklahoma market did not take place "in interstate commerce." But whatever the validity of that conclusion, it does not end the matter. For it is well established that an activity which does not itself occur in interstate commerce comes within the scope of the Sherman Act if it substantially affects interstate commerce. 389 U.S. 321, 88 S.Ct. 443, 444, 19 L.Ed.2d 554 (1967).

It is important to note that unlike the Sherman Act, the Hobbs Act does not require that the effect on interstate commerce be substantial. Extortionate conduct having an arguably de minimis effect on commerce may nevertheless be punished. See for e. g., United States v. De Met, 486 F.2d 816 (7th Cir. 1973); United States v. Tropiano, 418 F.2d 1069 (2nd Cir. 1969), cert. denied, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530; Battaglia v. United States, 383 F.2d 303 (9th Cir. 1967), cert. denied, 390 U.S. 907, 88 S.Ct. 817, 19 L.Ed.2d 874; United States v. Augello, 451 F.2d 1167 (2nd Cir. 1971), cert. denied, 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802; United States v. Glasser, 443 F.2d 994 (2nd Cir.

---

11. Trial Court's Instruction No. 13:
   The mere voluntary payment of the money, unaccompanied by any feeling of compulsion or duress, does not constitute extortion. Unless the payments here involved were made under some form of compulsion or duress, there has been no extortion.

12. 18 U.S.C., Sec. 1951, the Hobbs Act, provides in pertinent part: whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . .

1971), cert. denied, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95; United States v. Mitchell, 463 F.2d 187 (8th Cir. 1972). This analysis is in accord with the Supreme Court's decision delineating the purview of the Hobbs Act. In United States v. Stirone, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960), the Court stated in part,

> . . . [it] speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence.

 In the instant case it was established by stipulation that the supplies and equipment of the Bryn Mawr Bowling Lanes were purchased from manufacturers outside the state of Illinois. There was an implied threat that if payment was not made to Officer Crowley, the victims would not receive adequate police service, with the resultant effect of impairment of the business enterprise.[13] It was further established that the assets of the bowling lanes were depleted by the payment of one hundred dollars ($100) per month for six months. This Court observed in United States v. De Met, *supra,*

> Where the victim of extortion, as here, customarily obtains inventory which has come from outside the state, obstructions and delay of, and effect upon commerce may, for the purpose of the Hobbs Act, be found in curtailment of the victim's potential as a buyer of such goods. This may be traced either through the depletion of his assets by his fulfillment of the extortionate demands or the harm which would follow if the threats were carried out.

See also, United States v. Pacente, 503 F.2d 543 (7th Cir. 1974). It conclusively appears that defendant's extortionate conduct in the instant case sufficiently affected interstate commerce

to satisfy the jurisdictional requirements of the Hobbs Act.

In light of the foregoing analysis the Court finds defendant Crowley's contentions on appeal to be without merit. Accordingly, the conviction of defendant, Robert E. Crowley, is hereby affirmed.

---

13. The threat to do something which would affect commerce satisfies the commerce aspect of the statute. See, United States v. Pranno,

385 F.2d 387 (7th Cir., 1967), cert. denied, 390 U.S. 944, 88 S.Ct. 1028, 19 L.Ed.2d 1132 (1968).