UNITED STATES of America
v.
Gerard P. TROTTA, Defendant.
No. 74 Cr 681.

United States District Court,
E. D. New York.

June 30, 1975.

**756**

David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y. by Edward R. Korman, Chief Asst. U. S. Atty., for U. S.

Lyon & Erlbaum, Kew Gardens, N. Y., by William M. Erlbaum, Kew Gardens, N. Y., for defendant.

### MEMORANDUM AND ORDER

NEAHER, District Judge.

■ Defendant, a former public official, was indicted while in office for allegedly attempting to affect and affecting commerce by the extortion of political contributions from a partnership of consulting engineers in violation of the Hobbs Anti-Racketeering Act, 18 U.S.C. § 1951.[1] He has moved to dismiss the indictment, contending (1) it lacks "a plain, concise and definite" statement of specific facts essential to the offense as required by Rule 7(c), F.R.CrimP.; (2) it is too vague to protect his constitutional rights to be informed of the na-

---

1. This is the third indictment brought against the defendant for the alleged violations of the Hobbs Act. The earlier ones, 74 CR 126 and 74 CR 552, were dismissed on the government's consent, following oral argument on defense motions to dismiss and the filing of superseding indictments. The Hobbs Act provides, where pertinent:

"§ 1951. Interference with commerce by threats or violence

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—

\* \* \* \* \* \*

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

ture and cause of the accusation against him; and (3) it is insufficient as a matter of law for failure to allege how, why or in what manner the alleged extortion had an effect on interstate commerce. The merit of those objections must be tested only against the face of the indictment. Extrinsic particulars cannot be relied on to supply any missing essential element. *Russell* v. *United States,* 369 U.S. 749, 769–770, 82 S.Ct. 138, 8 L.Ed.2d 240 (1962).

Briefly, the indictment describes defendant's official position and authority as the Commissioner of Public Works, Town of Oyster Bay, Long Island. The alleged extortion victim, William F. Cosulich Associates (hereinafter "Cosulich"), is identified as a firm of consulting engineers that provided such services to the Town of Oyster Bay and engaged in interstate commerce. The defendant's powers of office, to the extent they could affect the retention and employment of Cosulich for the Town, are spelled out in some detail, concluding with the allegation that, as was reasonably understood by Cosulich, defendant had

> "the power to take action which could adversely affect William F. Cosulich Associates in obtaining and performing contracts with the Town of Oyster Bay, Long Island."

With that, each of the two counts in the indictment alleges in *haec verba* that defendant violated the Hobbs Act "by knowingly and wilfully demanding and obtaining from William F. Cosulich Associates" a specified sum of money on or about a specific date (different in each count),

> "for the benefit of the Republican Committee of the Town of Oyster Bay, Long Island, *with the consent of William F. Cosulich Associates,* and its members, *to the aforesaid payment having been induced* by the defendant GERARD P. TROTTA *under color of official right.*" (Emphasis supplied.)

■ Before discussing defendant's criticism of those allegations, some comment on the precise nature of the alleged offense is in order. Defendant is charged with affecting commerce by means of "extortion" in violation of 18 U.S.C. § 1951(a), as that term is defined in § 1951(b)(2), *supra* n. 1. Comparison of that definition with the above emphasized language of the indictment reveals that this case is founded solely on the statutory definition of extortion as "the obtaining of property from another, with his consent, induced . . . under color of official right." *Id.*

Recent case law leaves no doubt that the language "under color of official right" is regarded as broad enough to include within its scope any public official or employee who *wrongfully* uses his official position to exact a payment not due him or his office, under circumstances which can be said to affect commerce "in any way or degree", *supra* n. 1. *United States* v. *Braasch,* 505 F.2d 139, 151 (7 Cir. 1974) (police officers exacting "protection" money from liquor establishments); *United States* v. *Crowley,* 504 F.2d 992, 995 (7 Cir. 1974) (police officer demanding periodic payoffs for "providing security" to bowling alley); *United States* v. *Staszcuk,* 502 F.2d 875, 877–78 (7 Cir. 1974) (city alderman accepting payment not to oppose a zoning application); *United States* v. *Kenny,* 462 F.2d 1205, 1229 (3 Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972) (city and county officials exacting "kickbacks" as a condition to award of public contracts); *United States* v. *Irali,* 503 F.2d 1295, 1299–1301 (7 Cir. 1974) (clerk in city collector's office expediting liquor license application for suggested payment); *United States* v. *Price,* 507 F.2d 1349, 1350 (4 Cir. 1974) (county council chairman requiring payment to insure grant of motel permit).

■ The offense of extortion "under color of official right" is separate and distinct from coercive extortion—whereby property is obtained "by wrongful use of actual or threatened force, vio-

lence, or fear" [2]—in that proof of such duress is generally thought not to be required.[3] Instead, the "office held by the official provides the coercive impetus which generates the payment." [4] More generally, it has been held that this portion of the Hobbs Act states an offense equivalent to the common law crime of extortion, a crime that originally only a public official could commit.[5]

Against this background can it be said that the statutory language used in this indictment renders it insufficient and constitutionally vague, and fails to give defendant adequate notice of the charges against him? The defendant argues in essence that no facts appear on the face of the indictment which identify any conduct on his part pointing to criminality. Thus, he contends, he is left uninformed of the specific acts or conduct alleged to be in transgression of federal law.

■ The standard for judging the sufficiency of an indictment employing the words of a statute was recently reiterated by the Supreme Court in *Hamling* v. *United States*, 418 U.S. 87, 94 S. Ct. 2887, at 2907, 41 L.Ed.2d 590 (1974):

> "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any un-

certainty or ambiguity, set forth *all the elements* necessary to constitute the offence intended to be punished.' United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881)." (Emphasis supplied.)

The government rejects the claims of insufficiency, vagueness and inadequacy of notice, asserting that all of the "crucial facts" are alleged. These are identified as (1) the defendant's official position; (2) his ability to take official action adversely affecting the victim; (3) the victim's awareness of that power; and (4) the defendant's demand for, and receipt of, monies from the victim on the dates alleged.[6] In the government's view these are the essential elements of the offense charged, aside from the commerce element. As its brief states, "our position was that a demand for monies made by someone holding a public office from another person who could 'adversely and directly be affected' by the manner in which the public official exercised his powers constituted extortion under color of official right." [7]

Close analysis of the Hobbs Act and the cases applying it to local public officials casts serious doubt on the government's conception of what constitutes a violation of that Act. There is no question that Congress viewed actual or at-

---

2. 18 U.S.C. § 1951(b)(2), *supra* n.1.

3. *United States* v. *Braasch, supra,* 505 F.2d at 151 n.8 (holding this offense does not require proof of coercion); *United States* v. *Crowley, supra,* 504 F.2d at 995 n.5 (holding the offense need not involve force or threat); *United States* v. *Kenny, supra,* 462 F.2d at 1229 (holding proof of threat, fear or duress not required). See generally *United States* v. *Staszcuk, supra,* 502 F.2d at 877–78; Stern, Prosecutions of Local Political Corruption under the Hobbs Act: The Unnecessary Distinction Between Bribery and Extortion, 3 Seton Hall L.Rev. 1, 14–16 (1971).

4. *United States* v. *Staszcuk, supra,* 502 F.2d at 883 (Campbell, J., concurring). See *United States* v. *Sutter,* 160 F.2d 754, 756 (7 Cir. 1947); Stern, *supra* n.3, 3 Seton Hall L.Rev. at 15–17.

5. *United States* v. *Crowley, supra,* 504 F.2d at 994–95; *United States* v. *Kenny, supra,* 462 F.2d at 1229. See *United States* v. *Nardello,* 393 U.S. 286, 289, 89 S.Ct. 534, 536, 21 L.Ed.2d 487 (1969) ("At common law a public official who under color of office obtained the property of another not due either to the office or the official was guilty of extortion"). See generally authorities cited in *United States* v. *Braasch, supra,* 505 F.2d at 151 n.8; *United States* v. *Crowley, supra,* 504 F.2d at 995 n.4; 3 Wharton, Criminal Law §§ 1392, *et seq.* (Anderson ed. 1957); Stern, *supra* n.3, 3 Seton Hall L. Rev. at 15–17.

6. Gov't Mem. of Law at 9.

7. *Id.* at 10.

tempted interference with commerce by extortion or other unlawful means as a major federal offense. This is manifest from the severity of the penalty authorized for offenders—up to twenty years in prison and/or a $10,000 fine. In sharp contrast is the penalty for extortion committed by federal officers or employees "under color or pretense of office" as reflected in 18 U.S.C. § 872. For that offense—which could be committed by officials of vastly more powerful position than that held by this defendant—the maximum punishment is three years in prison and/or a $5000 fine. The same maximum punishment is provided for federal officials who solicit or receive a "contribution for any political purpose." 18 U.S.C. § 602.

█ Plainly, as the reported cases show, to allege a Hobbs Act violation requires substantially more than the "crucial facts" offered by the government. The charging portions of the instant indictment do not allege even the official extortion forbidden to federal officials in 18 U.S.C. § 872. Defendant is not accused of having made demands upon Cosulich "under color or pretense of office"; only that Cosulich's consent . . . "[was] induced by the defendant . . . under color of official right", p. 757 *supra*. And the government has clearly stated its interpretation of the last quoted clause: that defendant's *"ability* to take official action adversely" to Cosulich and the latter's *"awareness* of that power" constitutes extortion "under color of official right", p. 759 *supra* (emphasis supplied).

██ Although the victim's state of mind is always an essential element of the crime of extortion, *United States* v. *Kennedy,* 291 F.2d 457, 458 (2 Cir. 1961), it is not a substitute for the key essential element—actions or words by the alleged extortioner which induce a reasonable compulsion in the victim to submit to the extortioner's demand. While, as already noted, p. 758 *supra,* official position is regarded as a coercive substitute for threats of harm, that is not to say that a local public official who demands and obtains a political contribution from a businessman he can adversely affect *ipso facto* violates the Hobbs Act. Such a practice, however questionable and not to be condoned, is not extortion within the meaning of that Act any more than it is under the Penal Law of New York.[8]

█ An allegation that the defendant is a public official is not enough. Power inheres in public office. Every public official possesses the ability to affect favorably or adversely those who must (or believe they must) deal with him. The mere possession of that ability or the alleged victim's state of mind regarding it does not supply the missing element; nor does the defendant's "demanding and obtaining" the alleged political contributions. Solicitations for a political party are not part of any official duty. Whatever one may think of the ethics of the practice, a local public official's solicitation or receipt of political contributions is neither unlawful nor extortionate unless a *corrupt use* of the public office is manifest. See *United*

---

8. N.Y. Penal Law § 155.05(2) (McKinney 1975) provides, where pertinent:

"§ 155.05 Larceny; defined
 * * * * *
"2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:
 * * * * *
"(e) By extortion.
"A person obtains property by extortion when he compels or induces another per-

son to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:
 * * * * *
"(viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely."

*States* v. *Sutter*, 160 F.2d 754 (7 Cir. 1947). See also N. Y. Penal Law § 200.00 *et seq.* (McKinney's Consol.Laws, c. 40, 1975).

 Since the days of Blackstone, extortion under color of office has been uniformly recognized as the unlawful or wrongful taking by a public official of money not due either to the office or the official.[9] It is of the essence of the offense that "[t]he money . . . received must have been claimed or accepted in right of office, and the person paying must have yielded to official authority." 3 Wharton, *supra* n. 5, § 1393. See R. Perkins, Criminal Law 369–70 (2d ed. 1969). In addition, the officer must act with a corrupt motive, as the synonomous terms "under color of office" and "under color of official right" are technical expressions implying bad faith, corruption or breach of duty. See 3 Wharton, *supra* n. 5, § 1394; Perkins, *supra* at 371; Stern, *supra* n. 3, 3 Seton Hall L.Rev. at 14–15 & n. 61. See also the recent cases noted above p. 757 *supra.*

The instant indictment contains on its face no allegation of acts or words by defendant which could reasonably be construed to satisfy the elements of "extortion . . . under color of official right" within the meaning of the Hobbs Act. The words "wrongful use of" in the statutory definition, § 1951(b)(2),

must be read in conjunction with "under color of official right" as they are in the case of "actual or threatened force, violence, or fear"; otherwise innocent action by a public official could assume criminal coloration under the Act simply by virtue of his office.[10]

 The words "unlawfully attempt to affect commerce" or "knowingly and wilfully demanding and obtaining" the alleged political contribution do not supply the key missing element of wrongful or corrupt use of office. There can be no crime against commerce unless there is a crime of official extortion. There is no such extortion unless facts are alleged which disclose a payment made and received either for, or in contemplation of, a wrongful or corrupt use of office. The mere allegation that the consent of Cosulich was "induced by [defendant] under color of official right" is not a substitute which expresses "without any uncertainty or ambiguity . . . all the elements necessary to constitute the offense intended to be punished." *Hamling* v. *United States, supra,* 94 S.Ct. at 2907. If the government has such facts, it should set them forth in the indictment. Without them it has no offense.[11]

The defendant's motion to dismiss the indictment is granted.

So ordered.

9. Blackstone defined extortion as
 "an abuse of public justice, which consists in any officer's unlawfully taking, by colour of his office, from any man, any money or thing of value, that is not due to him, or more than is due, or before it is due." 4 W. Blackstone, Commentaries 141 (1769).
 The common law formulation in this country has been essentially the same. See 3 Wharton, *supra,* § 1392.

10. See *United States* v. *Kenny, supra,* where the court approved the following instruction: "Extortion under color of official right is the *wrongful taking* by a public officer of money not due him or his office, whether or not the taking was accomplished by

force, threats or use of fear." 462 F.2d at 1229 (emphasis supplied).

11. The government argues that in a prior brief dealing with an earlier dismissed indictment, defense counsel cited the indictment in *United States* v. *Palmiotti,* 254 F.2d 491 (2 Cir. 1958), as a good example of a proper indictment. The implication is that this indictment meets that test. It clearly does not. In *Palmiotti* all the factual elements of a classic labor extortion case based on threats of violence were succinctly set forth, including the interference with interstate shipments of construction granite. Nothing of the sort is shown in this indictment.