54 N.J. Super. 326 (1959)
148 A.2d 848
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH MATULE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1959.
Decided March 2, 1959.
*328 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. James A. Major argued the cause for defendant-appellant (Mr. Joseph H. Gaudielle, attorney).
Mr. William C. Brudnick argued the cause for plaintiff-respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
The defendant Matule was convicted of the statutory offense of extortion, denounced as a misdemeanor by N.J.S. 2A:105-1. He was acquitted on an indictment for conspiracy to extort, along with a co-defendant, Frank Sogorka. The latter was also indicted for extortion, but acquitted.
From the proofs at the trial the jury could have found the following facts. Matule and Sogorka were members of the Borough Council of the Borough of Fair Lawn in and for some time prior to the month of July 1956. Ralph Vail operated a new car Chevrolet agency in the borough. The zoning ordinance did not permit a used car lot in conjunction with an automobile sales business in the district where Vail's showroom was situated. This was a business handicap which Vail had tried for years to overcome by attempting to secure an amendment to the ordinance. Such *329 an amendment was adopted by unanimous vote of the borough council on July 10, 1956. Vail thereafter was entitled to operate a used car lot, subject to the requirement of an annual license issuable by the borough for a $100 fee.
About two weeks later Sogorka telephoned Vail and requested they meet for dinner at a Howard Johnson restaurant near the George Washington Bridge. Vail went there and met Sogorka and Matule. In the course of the ensuing conversation Sogorka and Matule told Vail they "had put in an awful lot of time and hours" on the used car lot ordinance "and they wanted [him] to pay to them a certain sum of money as a result of that." Asked for the amount sought, they said $5,000. Vail responded: "Jesse James did it with a gun and mask but you fellows look me in the face and state an amount as easily as that." There was proof from which it could be inferred Vail agreed to the request.
Subsequently Sogorka spoke to Vail on the telephone and told him Matule needed $2,500 for payments on a summer house he was building, and Vail agreed to pay it. Matule then called Vail and said he would send his wife over for the money. Mrs. Matule went to Vail's office with a letter of introduction requesting he give her "the papers" Matule was to sign. Vail put $2,500 in cash in an envelope and gave it to Mrs. Matule. He later made three $500 cash payments to Sogorka.
When asked why he yielded to the demands of the defendants, Vail testified:
"The difference was this. These gentlemen were in control of the situation in Fair Lawn and I had to get a used car license every year or else I couldn't operate my used car lot again, and a hundred and one things in relation to authority in power that could make life a little bit hard for a business man in that community. That was my thinking when I yielded to that request. Right or wrong, that was it."
Both Matule and Sogorka denied any meeting at the Howard Johnson restaurant. Matule testified he met Vail at his showroom in August 1956 and told him he had been *330 compelled to borrow $1,500 to finance his last election campaign. Vail offered to help. Later Vail telephoned, asking him to come in to see him. Matule said he could not come in person but would send his wife. Mrs. Matule returned from Vail's office with an envelope containing $1,500. He used it to pay campaign expenses.
The first ground of appeal is that the motion to acquit at the trial should have been granted because the State did not prove the crime of extortion. The argument is that unless the evidence shows an element of coercion or oppression in connection with the receipt or taking of the money the crime has not been committed. It is argued that the mere taking of money not due him by an official, even in relation to performance by him of his duties, does not establish the offense. We propose to show that defendant's position is legally unfounded when we deal with the attack upon the court's charge to the jury. At this point it is sufficient to say that even if the elements of oppression or coercion were indispensable to the crime the evidence adduced would, in our judgment, have been sufficient to permit the jury on appropriate instructions to find in the affirmative on the presence of these factors. It was clearly inferable from Vail's testimony that he was a most unwilling participant in this transaction and complied with the defendants' importunities only because he felt undue pressure from their actions, against the background of the surrounding circumstances of his business affairs in the community.
We deal next with defendant's exceptions to the definition of the statutory offense in the charge to the jury. The statute reads as follows (N.J.S. 2A:105-1):
"Any judge, magistrate or public officer who, by color of his office, receives or takes any fee or reward not allowed by law for performing his duties, is guilty of a misdemeanor."
In State v. Weleck, 10 N.J. 355 (1952), the court was concerned with the statutory predecessor of that section, having the same substantive purport, R.S. 2:127-1. The *331 court reaffirmed the holdings of earlier cases to the effect that the statute substantially re-embodied the common-law crime of extortion. It approved (10 N.J., at page 371) the holding in State v. Barts, 132 N.J.L. 74, 79 (Sup. Ct. 1944), affirmed 132 N.J.L. 420 (E. & A. 1945), wherein approval is given to the ancient concept that, while extortion, "in a comprehensive sense, signifies any oppression under color of right," yet "in the strict sense it signifies the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due to him, or more than is due, or before it is due." 1 Hawkins, Pleas of the Crown (6th ed. 1788), p. 316; 2 Bishop, Criminal Law (9th ed. 1923), p. 323.
Said Chief Justice Vanderbilt in Weleck (10 N.J., at pages 371, 372):
"It thus appears that the essential elements of the crime of extortion * * * are (1) an officer (2) by color of his office (3) taking money (4) that is not due him."
"By color of his office" was defined as meaning that "the officer must have taken money not due him for the performance of his official duties" (10 N.J., at page 372). The taking is not required to have preceded the performance of the duties (ibid.).
In the instant case the charge of the court to the jury as to the constituents of the offense charged in the indictment (which need not be quoted verbatim) followed faithfully the aforementioned statements in the Weleck opinion. The only exceptions taken thereto at the trial on behalf of the defendant were (1) that the definition of "by color of office," which was substantially in the verbiage of Weleck, failed to indicate that there must be "a coercive use of the powers of the office for the purpose of taking such money," and (2) that in connection with the instruction that "the payment may come after the performance of the services" there is the added requisite that "there was a definite understanding that it would be paid prior thereto"; in other words, that the defendant exacted the promise of the payment *332 as a condition of rendition of the service. Neither objection by this defendant is well founded in the common law, which, as is indicated above, is the fundament of the statutory offense. The Weleck opinion is dispositive and binds us, notwithstanding defendant's characterization of the definition of "by color of office" contained therein as an "unfortunate" "chance remark" for which there is no authority. That definition appears to have been an effort at simple paraphrase of the more complex definition given by Burdick (1 Law of Crime (1949), § 275, p. 395), and quoted in Weleck (10 N.J., at page 372) in the connection indicated, as follows:
"* * * That is, the service rendered, or to be rendered, or pretended to have been rendered, must be apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity."
Nothing in the foregoing gives any aid or comfort to the defendant's effort to establish an exaction, or a coercive or oppressive aspect of the taking, as an essential element of the offense. Other criminal statutes may use the term "extortion" in its more popularly understood senses, such as those contended for here, but decisions construing them are not authoritative where the common-law elements are the controlling criteria. See, e.g., United States v. Sutter, 160 F.2d 754 (7 Cir. 1947).
Defendant argues the court erred in instructing the jury that there was an irreconcilable conflict between the testimony of Vail, on the one hand, and that of Matule and Sogorka, on the other, and that the jury should determine "who is telling the truth." It is contended that this was error when not put in terms of an instruction that Vail's version of the affair had to be believed beyond a reasonable doubt to warrant conviction. But the court did tell the jury elsewhere in the instructions that conviction of each offense charged required establishment of guilt thereof beyond a reasonable doubt. It was not necessary that this formula be repeated on each aspect of the proofs commented upon *333 by the court. State v. Smagula, 39 N.J. Super. 187 (App. Div. 1956). The comment was appropriate in the light of the evidence and the charge unexceptionable in this respect.
Error is also charged in respect to permitting the defendant to be cross-examined with reference to a letter by defendant to the borough clerk, appended to a statutory affidavit of campaign expenses filed by his campaign managers, which recited that his total expenditures in the May 1956 election campaign were $1,750. The purpose of the State was to attack defendant's credibility in view of his testimony that the expenses of the campaign had amounted to $5,000. We have inspected the record and find no abuse of the court's discretion in the handling of this trial episode.
No trial error being found, the judgment of conviction must be
Affirmed.