**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Don B. HARDING, Defendant-Appellant.**

**No. 77–5030.**

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1977.

Decided Sept. 29, 1977.

---

Edward A. Kizer, Goff, Canale, Kizer & Cribbs, Memphis, Tenn., Howard F. Butler, Nashville, Tenn., for defendant-appellant.

Thomas F. Turley, Jr., U. S. Atty., W. Hickman Ewing, Jr., Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, ENGEL, Circuit Judge, and FREEMAN, Senior District Judge.[*]

RALPH M. FREEMAN, Senior District Judge.

Appellant Don B. Harding, urging this Court to re-examine the scope of the statute under which he was convicted, challenges the application of 18 U.S.C. § 1951, commonly known as the Hobbs Act, to his allegedly criminal activity.

Harding was the executive director of the Tennessee Real Estate Commission, one function of which is to issue licenses to real estate brokers and affiliate brokers. Harding, as executive director, was the office manager of the Commission office located in Nashville, Tennessee. He was not a member of the Commission itself and therefore had no authority or discretion to issue licenses.

In January, 1976, Harding received a letter from Brenda Kaye Johnson, a licensed affiliate broker who had just failed in her third attempt to pass the Tennessee real estate brokers' licensing examination. Ms. Johnson wrote to Harding because his name appeared on the letter which had notified

---

[*] Honorable Ralph M. Freeman, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

her of her failure, and she wanted to discuss the matter with him. Harding's secretary telephoned Ms. Johnson and arranged for a meeting between Harding and Ms. Johnson at the Hyatt Regency Hotel in Memphis in mid-February, 1976. At that meeting, Harding suggested that he could assist Ms. Johnson in passing her brokers' exam by selling her a copy of the questions and answers for $300. Although Ms. Johnson agreed to that arrangement, she reported the incident to the FBI, who then enlisted her cooperation in investigating Harding's activities. They tape recorded a conversation during which Harding arranged another meeting with Ms. Johnson, and also tape recorded the meeting at which Ms. Johnson paid him $300 supplied by the FBI in exchange for the brokers' exam.

In furtherance of the investigation into Harding's misconduct, the FBI contacted Donald Nasca, who had also twice failed the Tennessee real estate brokers' examination. Nasca cooperated with the FBI in sending Harding a letter similar to Ms. Johnson's requesting assistance in passing the brokers' examination. Harding then called Nasca and offered to sell him a copy of the exam. In April, 1976, Nasca met with Harding in Jackson, Tennessee, and gave him money provided by the FBI to purchase the exam; he also tape recorded the entire transaction.

The sole question on appeal in this case is whether Harding's conduct is cognizable as extortion under the terms of the Hobbs Act, 18 U.S.C. § 1951. The statute provides as follows:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

. . . . .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

The defendant raises two issues concerning the scope of the Hobbs Act. First, defendant claims that the offending transactions were not shown to have the requisite effect on interstate commerce. Secondly, defendant suggests that his activity does not constitute the obtaining of property "under color of official right" because he in fact had no power to issue a broker's license and the other parties involved did not believe he had such power. As part of this contention defendant suggests that his conduct was never intended to be encompassed within the scope of the Hobbs Act because it involves common law bribery rather than extortion as defined in the statute.

The statute itself provides in subsection (a) that "[w]hoever *in any way or degree* obstructs, delays, or affects commerce . . . by robbery or extortion . . . shall be [guilty of a felony]." (emphasis added). Many courts have considered whether the showing of a minimal effect on interstate commerce will satisfy the requirements of the Act, and all have agreed that it will. In *United States v. Staszcuk,* 517 F.2d 53 (7th Cir.), cert. denied, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), the Seventh Circuit held *en banc* that federal jurisdiction under the Hobbs Act was satisfied by showing that at the time of the offense there was a realistic probability that the robbery or extortion would have affected interstate commerce. This was an

expansion of their earlier holding in *United States v. DeMet,* 486 F.2d 816, 821–22 (7th Cir. 1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); and *United States v. Braasch,* 505 F.2d 139, 147 (7th Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975), that "[b]ecause Congress has seen fit to exercise its full power under the commerce clause, extortionate conduct having an arguably *de minimus* effect on commerce may nevertheless be punished." The Third Circuit, in *United States v. Mazzei,* 521 F.2d 639, 642–43 (3rd Cir.), cert. denied, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975) held that the depletion of assets of a firm which conducts interstate activities creates an effect on commerce sufficient to satisfy the Hobbs Act despite the local character of the particular extortionate transaction. The *de minimus* rule was also applied in *United States v. Hathaway,* 534 F.2d 386 (1st Cir.), cert. denied, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); and *United States v. Brown,* 540 F.2d 364 (8th Cir. 1976).

■ This Court agrees with the *de minimus* rule applied by the other Circuits. The Act itself suggests that no more than a minimal effect on interstate commerce need be shown, and the case law is entirely consistent with that language. Moreover, the Court is satisfied that the Government proofs on the issue of interstate commerce meet the requirements of the Hobbs Act.

John Palmer, a real estate broker from Memphis, testified that Tennessee real estate transactions frequently involve purchasers from other states, that real estate listings in Memphis newspapers are widely circulated in Arkansas and Mississippi, and that Tennessee brokers are regulated by the federal government with respect to various housing and loan programs.

Mr. Nasca, who purchased a copy of the exam from Mr. Harding, testified that extensive advertising of Tennessee real estate listings was directed to out-of-state customers, that brokers often made use of a service named Inter-Community Relocation Service, which involves real estate companies in every city of the country, and that fifty percent of the business done by his firm involved people being transferred in and out of Memphis.

Under the facts as described above, the Government clearly established that the extortionate transactions affected interstate commerce. Defendant's argument that the *de minimus* rule creates an unwarranted incursion into the sphere of state criminal law ignores the language and intent of the statute itself. The jurisdictional requirement concerning interstate commerce is satisfied by the facts of this case.

■ Defendant's contention that his conduct did not constitute extortion as defined by the Act has also been heavily litigated. While this Court agrees with the other courts which have considered the issue and decided that conduct similar to that of Mr. Harding's is cognizable under the Hobbs Act, a few additional words of explanation seem in order.

The statute defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." An examination of the legislative history of the Hobbs Act helps to add content to that definition. The precursor of the Hobbs Act was the Anti-Racketeering Act of 1934.[1] That Act did not use the word "extortion" to define the proscribed conduct, but rather used the descriptive terminology of the common law offense.[2]

---

1. Act of June 18, 1934, ch. 569, 48 Stat. 979.

2. The 1934 Act stated, in pertinent part:

Sec. 2. Any person who, in connection with or in relation to any act in any way or in any degree affecting trade or commerce or any article or commodity moving or about to move in trade or commerce—

(a) Obtains or attempts to obtain, by the use of or attempt to use the threat to use force, violence, or coercion, the payment of money or other valuable considerations, or the purchase or rental of property or protective services, not including, however, the payment of wages by a bona-fide employer to a bona-fide employee; or

While the Act was passed without formal debate, the House and Senate Reports[3] both indicate the intent of the legislation. The Senate Report stated:

> The accompanying proposed statute is designed to avoid many of the embarrassing limitations in the wording and interpretation of the Sherman Act, and to extend Federal jurisdiction over all restraints of any commerce within the scope of the Federal Government's constitutional powers. Such restraints if accompanied by extortion, violence, coercion, or intimidation, are made felonies, whether the restraints are in form of conspiracies or not. The proposed statute also makes it a felony to do any act "affecting" or "burdening" such trade or commerce if accompanied by extortion, violence, coercion, or intimidation.
>
> The provisions of the proposed statute are limited so as not to include the usual activities of capitalistic combinations, bona fide labor unions, and ordinary business practices which are not accompanied by manifestations of racketeering.

The House Report, which suggested some changes from the original Senate bill, contained a letter from Homer Cummings, Attorney General, to the chairman of the House Judiciary Committee. The letter explained the proposed changes as follows:

> We believe that the bill in this form will accomplish the purposes of such legislation and at the same time meet the objections made to the original bill.
>
> The original bill was susceptible to the objection that it might include within its prohibition the legitimate and bona fide activities of employers and employees. As the purpose of the legislation is not to interfere with such legitimate activities but rather to set up severe penalties for

racketeering by violence, extortion, or coercion, which affects interstate commerce, it seems advisable to definitely exclude such legitimate activities.

> As the typical racketeering activities affecting interstate commerce are those in connection with price fixing and economic extortion directed by professional gangsters, we have inserted subparagraphs (a) and (b), making such activities unlawful when accompanied by violence and affecting interstate commerce.
>
> The Sherman Antitrust Act is too restricted in its terms and the penalties thereunder are too moderate to make that act an effective weapon in prosecuting racketeers. The anti-racketeering bill would extend Federal jurisdiction in those cases where racketeering acts are related to interstate commerce and are therefore of concern to the Nation as a whole.

The final version of the Anti-Racketeering Act of 1934 was in fact substantially similar to the version proposed by the House.

Apparently the 1934 Act was not clear enough in its wording and intent, however, because the Supreme Court in *United States v. Teamsters Local 807*, 315 U.S. 521, 62 S.Ct. 642, 86 L.Ed. 1004 (1942) narrowly construed the statute to exclude certain types of labor union activity. The immediate response of Congress was to amend the statute to the form currently known as the Hobbs Act.[4]

In the debates surrounding the passage of the Hobbs Act a number of New York Congressmen expressed opposition to the Act because they considered it to be anti-labor.[5] The Act's proponents sought to allay the fears of their colleagues by pointing out that the Act was comparable to the existing

(b) Obtains the property of another, with his consent, induced by wrongful use of force or fear, or under color of official right; or

(c) Commits or threatens to commit an act of physical violence or physical injury to a person or property in furtherance of a plan or purpose to violate sections (a) or (b) . .

(d) . . . shall . . . be guilty of a felony . . . .

3. H.Rep. No. 1833 and S.Rep. No. 532, 73d Cong., 2d Sess. (1934).

4. Act of July 3, 1946, ch. 537, 60 Stat. 420. Actually, the Act was slightly amended again in 1948.

5. 91 Cong.Rec. 11901–02 (1945) (remarks of Congressman Cellar).

law of New York. Congressman Hobbs stated:

> [T]here is nothing clearer than the definitions of robbery and extortion in this bill. They have been construed by the courts not once, but a thousand times. The definitions in this bill are copied from the New York Code substantially.[6]

In fact, the Hobbs Act definition of extortion is similar, although not identical to, New York law as it existed at that time.[7]

A point of critical importance, however, is that many states other than New York had extortion statutes which used the phrase *"under color of official right."* [8] Moreover, while it is true that the debates focused on the New York statute as a point of reference, nothing in those debates leads this Court to conclude that Congress intended to adopt New York decisional law as controlling on the federal courts, particularly since the anomalous New York definition of extortion was not articulated until 1960, some 14 years after the passage of the Hobbs Act.

The leading New York case on extortion is *People v. Dioguardi,* 8 N.Y.2d 260, 203 N.Y.S.2d 870, 168 N.E.2d 683 (1960), which held that bribery and extortion are mutually exclusive and that while bribery involves the voluntary giving of something of value to influence the performance of official duty, extortion involves a taking accompanied by duress. The *Dioguardi* distinction was picked up by several federal cases, although none of those cases involved the definitional phrase "under color of official right." See *United States v. Kennedy,* 291 F.2d 457 (2d Cir. 1961); *United States v. Kubacki,* 237 F.Supp. 638 (E.D.Pa.1965). Rather, those cases suggested that the two prongs of the Hobbs Act definition—"[use] of actual or threatened force, or violence or fear" or "under color of official right"—are meant to be read as interrelated, i. e., that extortion requires an act done under color of official right which is induced by force, violence or fear. The upshot was that cases following the New York interpretation of extortion focused on the victim's state of mind to determine whether an offense committed under color of office was bribery or extortion.

The common law understanding of extortion, however, and its evolution into contemporary statutes and decisions does not require this distinction between extortion and bribery. At common law, extortion was a crime which could only be committed by a public official. *Corpus Juris Secundum* states:

> [I]n the common law the term "extortion" has acquired a technical meaning, and designates a crime committed by an officer of the law who, under cover or color of his office, unlawfully and corruptly takes any money or thing of value that is not due to him, or more than is due, or before it is due. In a more enlarged sense, it signifies any oppression under color or pretense of right.[9]

In defining the phrase "color of office," *C.J.S.* goes on to explain:

> [The] phrase [is] generally defined as meaning a claim or assumption of right to do an act by virtue of an office, made by a person who is legally destitute of any such right; . . .
>
> The term is a technical expression, and usually implies bad faith, corruption, breach of duty, or an evil or corrupt motive.[10]

---

**6.** *Id.* 11900.

**7.** The New York statute provides:

> Extortion is the obtaining of property from another, or the obtaining the property of a corporation from an officer, agent or employee thereof, with his consent, induced by a wrongful use of force or fear, or under color of official right.

Penal Law of 1909, § 850, *as amended,* Laws of 1917, ch. 518, *reprinted in* N.Y. Penal Law, appendix § 850 (McKinney 1967).

**8.** See remarks of Congressman Robison of Kentucky, 91 Cong.Rec. at 11906, 11910 (1945); and remarks of Congressman Springer of Indiana, *id.*

**9.** 35 *C.J.S.* Extortion 355–56.

**10.** 15 *C.J.S.* Color of Office 352–53.

A number of extortion statutes purport to do no more than codify the common law. New Jersey, for example, has interpreted its statute to have adopted the common law meaning of extortion. *State v. Matule,* 54 N.J.Super. 326, 148 A.2d 848 (1959). Other statutes, however, add an additional basis for finding extortion by including any obtaining of property from another with his consent through a wrongful use of force or fear, thus including acts not done under color of official right. Michigan, California and Oklahoma all have extortion statutes which define this additional basis for the offense. *People v. Goodman,* 159 Cal. App.2d 54, 323 P.2d 536 (1958); *People v. Ritholz,* 359 Mich. 539, 103 N.W.2d 481 (1960); *Yoder v. State,* 493 P.2d 1141 (Okl. Cr.App.1972).

Whether or not their particular statute defines a basis for extortion which does not involve the color of official right doctrine, a number of states have held that extortion based on that doctrine covers a wide range of activity, including what is commonly understood as bribery, and that extortion and bribery are not mutually exclusive. The New Jersey courts have defined extortion as "the wrongful taking of money by a public officer, whether accompanied by 'threats' or not." *State v. Begyn,* 34 N.J. 35, 167 A.2d 161 (1961). See also *State v. Newton,* 328 So.2d 110 (La.1976); *United States v. Hyde,* 448 F.2d 815 (5th Cir. 1971), cert. denied, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972); *United States v. Hathaway,* 534 F.2d 386 (1st Cir.), cert. denied, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). The decisions of Illinois, Kansas and Massachusetts also support such a reading of the law, in that cases decided in those jurisdictions have used the terms "bribery" and "extortion" interchangeably. See *People v. Clemons,* 26 Ill.2d 481, 187 N.E.2d 260 (1962); *State v. Jordan,* 220 Kan. 110, 551 P.2d 773 (1976); *Commonwealth v. DeVincent,* 358 Mass. 592, 266 N.E.2d 314 (1971). Thus extortion defined as the wrongful obtaining of property under color of official right need not include the element of force or duress, and could include such activity as is commonly considered to be bribery.

The fact that the Hobbs Act is drafted in the disjunctive supports an interpretation of the Act which covers the wrongful obtaining of property under color of official right whether or not accompanied by threats, force or duress. The other Circuits which have considered this issue have all accepted such an interpretation. In *United States v. Braasch,* 505 F.2d 139, 151 (7th Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975), the court rejected the extortion/bribery distinction and held that the Hobbs Act had been violated by police officers who had set up a scheme of protection money payoffs from bars and other establishments in their district. The court stated:

> The use of office to obtain payments is the crux of the statutory requirement of "under color of official right", and appellants' wrongful use of official power was obviously the basis of this extortion. *See United States v. Staszcuk,* 502 F.2d 875 (7th Cir. 1974). It matters not whether the public official induces payments to perform his duties . . . or not to perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951. That such conduct may also constitute "classic bribery" is not a relevant consideration.[7]

[7] As appellants themselves point out, "the modern trend of the federal courts is to hold that bribery and extortion as used in the Hobbs Act are not mutually exclusive. *United States v. Kahn,* 472 F.2d 272, 278 (2d Cir. 1973) *cert. den.,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958."

In *United States v. Mazzei,* 521 F.2d 639, 644 (3d Cir.), cert. denied, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975), the Third Circuit *en banc* distinguished its own precedent in *United States v. Addonizio,* 451 F.2d 49 (3d Cir.), cert. denied, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), reh. denied, 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972) and held that "[a]ny element of coercion that may be required to establish extortion under the Hobbs Act is supplied by

the misuse of the defendant's official power." The First Circuit referred to the evolution of the common law crime of extortion in applying the Hobbs Act to a scheme involving payoffs to the executive director of a Massachusetts redevelopment authority. *United States v. Hathaway,* 534 F.2d 386, 393 (1st Cir.), cert. denied, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). The court first explained why the disjunctive language of the statute permits conviction upon a finding that property was unlawfully obtained either under color of official right or through force or duress. The court stated:

> [W]e find no reason to part company with the other circuits which have considered this question, all of which have read the statute as did the court below. [citations omitted] The statute is clearly phrased in the disjunctive . . . Further, a disjunctive reading comports with the historical development of the crime of extortion. The "under color of official right" language reflects the common law definition of extortion, which could be committed only by a public official's corrupt taking of a fee under color of his office and did not require proof of threat, fear or duress. [citations omitted] The misuse of public office is said to supply the element of coercion. [citations omitted] Threats, fear and duress became express elements only when the crime was later broadened to include actions by private individuals, who had no official power to wield over their victims.

The court went on to note that bribery and extortion as used in the Hobbs Act are not mutually exclusive. The Tenth Circuit made similar findings in *United States v. Hall,* 536 F.2d 313 (10th Cir.), cert. denied, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976).

This Court is satisfied that the disjunctive language of the statute, the legislative history, and the common law understanding of extortion support the interpretation of the other courts which have considered this matter. Under such an interpretation, the Hobbs Act would clearly include the conduct of which Harding was convicted. This Court's decision in *United States v. Yokley,* 542 F.2d 300 (6th Cir. 1976) does not require a different result. In that case, this Court held that the armed robbery of a K-Mart Department Store was not within the scope of the Hobbs Act because it did not constitute "racketeering." The concept of racketeering, however, has long been understood to include the obtaining of property under color of official right, as is clear from the focus of the Congressional debates.[11] *Black's Law Dictionary* defines racketeering as "extortion or coercion" in certain contexts and includes by implication the common law background of extortion. Thus the concepts of racketeering, extortion, and unlawful obtaining of property under color of official right have large areas of overlap which are applicable through the Hobbs Act to conduct such as that of the defendant in this case.

■ Finally, the Court rejects the defendant's contention that he cannot be convicted for obtaining property under color of office because he in fact had no power to grant real estate brokers' licenses and the persons to whom he sold the exam did not believe that he had such power. The law is well settled that an official need not have the *de jure* power to effectuate the end for which he accepts or induces payment in order to be convicted under the Hobbs Act. In *United States v. Mazzei,* 521 F.2d 639 (3d Cir.), cert. denied, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975), the court stated:

> It is clear, of course, that defendant had no statutory power as a state senator to control the granting of leases by state executive agencies. But in order to find that defendant acted "under color of official right," the jury need not have concluded that he had actual *de jure* power to secure grant of the lease so long as it found that Kelly held, and defendant exploited, a reasonable belief that the state system so operated that the power in fact of defendant's office included the effec-

---

11. See 91 Cong.Rec. 11840–910 (1945).

tive authority to determine recipients of the state leases here involved. [citations omitted] Such an exploitation involves the wrongful use of official power that has long been punished at common law as extortion "under color of public office."

See also *United States v. Meyers,* 529 F.2d 1033 (7th Cir.), cert. denied, 429 U.S. 894, 97 S.Ct. 253, 50 L.Ed.2d 176 (1976); and *United States v. Hall,* 536 F.2d 313 (10th Cir.), cert. denied, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976).

Defendant's argument that he had no control over the granting of brokers' licenses merely shows that he had no direct authority over such matters. Through his position as executive director of the real estate commission, however, he had access to the examination, which was the key to obtaining the brokers' license. Selling the exam was but a step removed from selling the license, and it is an artless sophistry to argue that the persons who paid Harding did not believe that they were in effect purchasing a broker's license.

Harding's activity with respect to the selling of licensing examinations was a clear abuse of his office within the proscription of the Hobbs Act. As the court observed in *United States v. Braasch,* 505 F.2d 139, 151 (7th Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975): "So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951." Thus defendant's contention that his activity was outside the scope of the statute is without merit. As it has been interpreted by modern courts, the Hobbs Act has become an effective force in the prosecution of venal public officials. This Court sees no reason to differ from the numerous other courts which have found conduct similar to that of Harding's to be a federal offense.

For the reasons herein stated the judgment of the district court is affirmed.