UNITED STATES of America

v.

Henry E. WILLIAMS.

Crim. A. No. 79–46.

United States District Court,
E. D. Louisiana.

June 20, 1979.

Richard T. Simmons, Jr., Asst. U. S. Atty., Chief, Crim. Div., Geoffrey L. Beauchamp, Asst. U. S. Atty., New Orleans, La., for plaintiff.

Virgil M. Wheeler, Jr., New Orleans, La., for defendant.

## ORDER AND REASONS

DUPLANTIER, District Judge.

This case involves an unusual and apparently first attempt in this Circuit to apply the "color of official right" part of the "extortion" definition in the Hobbs Act to activities of a local public official not involving duress or fear of harm.

Defendant, Henry Williams, was convicted by a jury on all counts of a three count indictment charging violations of 18 U.S.C. § 1951, known as the Anti-Racketeering Act or the Hobbs Act, which, *inter alia*, prohibits "extortion" affecting interstate commerce.[1]

"Extortion" is defined in subsection (b)(2) of the act:

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

Each count of the indictment charges that defendant, while a member of the Jef-

1. The act provides:

§ 1951. Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or at-

tempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

ferson Parish, Louisiana, School Board, an elective office, "did knowingly, willfully and unlawfully attempt to and did . . affect interstate commerce . . . by means of extortion, in that the defendant, did unlawfully seek, ask, solicit, and receive, under the color of official right . . . [either a cash sum (Counts One and Two) or airline tickets (Count Three)], not due him or his office and to which neither he nor his office was entitled . . . ." The indictment is set forth in full in an Appendix hereto.

There is no allegation in the indictment, nor is there any evidence whatsoever, that the defendant used actual or threatened force, violence or fear, not even fear of economic loss, to induce the payments. The government's position is that "force, violence or fear", or the threat thereof, is not essential to the commission of the offense. As stated in its Reply to Defendant's Supplemental Motion In Arrest of Judgment, the government contends that a local public official violates the statute (assuming requisite effect upon interstate commerce) if he "accepts money or things of value knowing that he is not entitled to these gratuities for the lawful discharge of his duties and, secondly, that the payment of those gratuities were (sic) induced by his official position."

On more than one occasion during pretrial conferences, in response to the court's inquiries the government confirmed that it intended to produce no evidence that defendant represented to the "donor" that he was entitled by virtue of his public office to the property he obtained, nor that there was actual or threatened fear, express or implied, of economic loss. The government's contention, based upon the disjunctives in the statutory definition, as applied here, is that the statute proscribes "the obtaining of property from another, with his consent under color of official right," which includes accepting gratuities and bribes. In defining extortion in its charge to the jury, the court included the term "induced" before "under color of official right", on the basis that the defendant is entitled to the strict interpretation of a criminal statute and that "induced" could modify every phrase thereafter. The pertinent part of the charge is attached as an Appendix hereto. The court also included another element not specified in the statutory definition, i. e., that there must be an indication by the defendant to the "donor" that defendant will favor the "donor" in defendant's official capacity. In effect, the court acceded to the government's contention that, in this case, extortion is synonymous with the solicitation of a bribe.[2]

By a motion in arrest of judgment under Rule 34, Fed.R.Cr.P., Williams for the first time raised the contention that as applied to this case, the Hobbs Act is unconstitutionally vague.[3] His challenge centers on the words "under color of official right" in the statute's definition of extortion, used in each count of the indictment. If the statute is impermissibly vague, then the indictment which tracks the statutory language fails to charge an offense and defendant's conviction cannot stand.

Stripped of verbiage which is either inapplicable or of no consequence, and reconstructed to illustrate the issue more clearly, the statute as charged in the indictment provides that "Whoever obtains something of value from another, with his consent, induced under color of official right" is guilty of an offense against the United States. For the following reasons, the court holds that the part of the statute at issue is unconstitutionally vague and that

---

**2.** The defendant requested no special charges nor did he object to the court's charges.

**3.** The court is of the opinion that the motion is timely under Rule 34, since it raises the point that the indictment does not charge an offense. If Rule 12(b)(2) requires the filing of the motion prior to trial, the court grants under Rule 12(f) "relief from the waiver" otherwise resulting.

To do otherwise would result in an injustice to the defendant by penalizing him for his attorney's failure to raise the point earlier. To hold that the objection is waived would be especially inappropriate where, as here, the government concedes that it would not have sought an amended indictment if the issue had been raised pretrial.

therefore the indictment fails to state an offense. The motion in arrest is granted, the jury verdict is set aside, and the indictment is dismissed.

Alternatively, we hold that even if its meaning is sufficiently clear to be constitutional, the statute does not mean what, at the government's request, the court charged it to mean. Therefore, although there was ample evidence to support the jury verdict based upon the government's theory and the court's charge as to the meaning of the statute, since the charge instructed the jury that an essential element of the crime, coercion, was not an element, and since there was no evidence of coercion, the conviction cannot stand. Accordingly, as an alternative to the order granting the motion in arrest of judgment, the court *sua sponte* sets aside its judgment denying defendant's motion for judgment of acquittal and grants the motion.

■■■ The test to be applied when a criminal statute is challenged for vagueness is whether the terms of the statute are sufficiently precise to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). The court finds that the statute, as employed in this indictment, fails to meet this test.

In a recent decision, *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), the Supreme Court reaffirmed its "long-established practice of resolving questions concerning the ambit of a criminal statute in favor of lenity."

This practice reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of due process, which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited. Thus, to ensure that the legislature speaks with special clarity when marking the boundaries of criminal conduct, the courts must decline to impose punishment for actions that are not 'plainly and unmistakably' proscribed. [citations omitted] 99 S.Ct. at 2197.

There is apparently no specific discussion as to the meaning of the phrase "under color of official right" in the legislative history of the Hobbs Act. The language seems to have been derived from Section 850 of the New York Penal Law of 1909:

Extortion is the obtaining of property from another, or the obtaining of the property of a corporation from an officer, agent or employee thereof, with his consent, induced by a wrongful use of force or fear, or under color of official right.[4]

The New York law, it should be noted, is different from the common law definition of extortion. Under the common law, extortion was defined as "the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due to him, or the taking of more than is due, or the taking of money before it is due."[5]

There are at least two important distinctions between the common law definition of extortion and that in the Hobbs Act: The common law refers to "unlawful taking", the Hobbs Act merely to "obtaining"; at common law the "taking" must be "by any officer by color of his office", under Hobbs the "obtaining" must be "under color of official right."[6]

---

4. Penal Law of 1909, § 850, as amended, Laws of 1917, ch. 518, reprinted in N.Y. Penal Law, appendix § 850 (McKinney 1967).

5. *U. S. v. Laudani*, 134 F.2d 847, 851 (3rd Cir. 1943); see *Words and Phrases*, "Extortion"; 31 *Am.Jur.2d*, "Extortion, Blackmail and Threats"; 35 *C.J.S.*, "Extortion" and cases cited therein. For a full discussion of the legislative history of the Hobbs Act and the origins of the statute's

definition of extortion, see the dissenting opinion of Judge Gibbons in *U. S. v. Mazzei*, 521 F.2d 639 at 646 (3rd Cir. 1975). *See also U. S. v. Harding*, 563 F.2d 299 (6th Cir. 1977).

6. For an interesting analysis of questions of interpretation of the Hobbs Act as applied in a number of recent public official prosecutions, *See* 5 Loyola U.L.J. 513 (1974).

Whatever the elements of the crime of extortion may be under the common law or under state statutes which adopted similar wording, the issue to be decided is whether the words of this particular statute are sufficient to give a present day public official fair warning as to what conduct may be subject to the sanctions of the criminal law. This statute cannot be made constitutional by incorporation of some historic definition of extortion, for the statute itself defines the term, and the indictment refers to only the stated part of the definition. In any event, we have been referred to no historic definition of "obtaining . . . induced . . . under color of official right"; indeed, this terminology is apparently of recent origin, whatever it may mean.

There are a number of questions as to what activities are meant to be covered by the statute. As a matter of syntax, the statute is clearly disjunctive; the offense is committed if one obtains property of another induced *either* by "wrongful use of actual or threatened force, violence, or fear", or "under color of official right".[7] As already noted, the indictment charges only the latter activity, not the former. However, the structure of the statute also makes clear that the word "wrongful" in the definition cannot be held to modify "under color of official right." Yet, some courts have read into the statute a requirement that a defendant use his office "wrongfully."[8] The indictment at issue here charges that the defendant did "unlawfully seek . . . and receive . . . ". By describing ac-

tivity as "unlawful" an indictment cannot make it so, nor thus cure an otherwise unconstitutional statute. The statute also leaves open the question of whether the official must initiate the transaction, that is, make a demand for the money or property. There is a question whether the word "induced" in subsection (b)(2) applies to a case brought solely under the "official right" portion of the disjunctive statutory definition. As already noted, the jury was charged that the word "induced" was part of the applicable statute and that the government had to prove that the defendant initiated the transaction. Just as an indictment cannot cure defects in the statute, neither can the court's charge.

Apparently, it is only relatively recently that prosecutions under the Hobbs Act have been brought against public officials solely under the "official right" portion of the statute, that is, where there is no allegation of force, threats or duress.[9]

In some reported cases, the issue has arisen as to whether the statute covers bribery of a public official, where the payor suggests the scheme and makes the payment freely and voluntarily. Some courts which have considered this issue have held that conduct constituting bribery is covered by the statute, i. e., that the crimes are not mutually exclusive.[10] However, the holdings in other cases imply that there must be some demand or threat made by the official in order to bring the transaction under the coverage of the Hobbs Act.[11]

---

7. See *U. S. v. Kenny*, 462 F.2d 1205, 1229 (3rd Cir. 1972).

8. *U. S. v. Kenny*, 462 F.2d 1205 (3rd Cir. 1972); *U. S. v. Braasch*, 505 F.2d 139 (7th Cir. 1974).

9. The Court in *U. S. v. Staszcuk*, 502 F.2d 875, 877 (7th Cir. 1974) remarked, "Apparently this is one of the first prosecutions under section 1951 to rely solely on subsection (b)(2)'s definition of extortion as 'the obtaining of property from another, with his consent, induced . . under color of official right'." Other cases, while discussing the meaning of "under color of official right," have affirmed convictions on the alternative finding that "fear of economic loss" was present. *U. S. v. Sopher*, 362 F.2d 523 (7th Cir. 1966); *U. S. v. Irali*, 503 F.2d 1295 (7th Cir. 1974); *U. S. v. Crowley*, 504 F.2d 992 (7th Cir.

1974); *U. S. v. Price*, 507 F.2d 1349 (4th Cir. 1974); *U. S. v. Brown*, 540 F.2d 364 (8th Cir. 1976); *U. S. v. Adcock*, 558 F.2d 397 (8th Cir. 1977); *U. S. v. Reilly*, 456 F.Supp. 211 (E.D.Pa. 1978), *affirmed*, 601 F.2d 577 (3rd Cir. 1979).

10. *U. S. v. Braasch*, 505 F.2d 139, 151 (7th Cir. 1974); *U. S. v. Hathaway*, 534 F.2d 386 (1st Cir. 1976); *U. S. v. Hall*, 536 F.2d 313 (10th Cir. 1976); *U. S. v. Harding*, 563 F.2d 299 (6th Cir. 1977).

11. See e. g., *U. S. v. Wright*, 588 F.2d 31 at 33 (2d Cir. 1978); *U. S. v. Addonizio*, 451 F.2d 49 (3rd Cir. 1972). In *U. S. v. Hathaway, supra*, the court commented that an instruction to the jury which implied that the initiative had to come *solely* from the official may have been

Taken literally, the words "obtain property under color of official right" would seem to require that an official represent to another person that he is entitled to something of value, as of right, because of his official position, an interpretation which was rejected in *U. S. v. Braasch*, 505 F.2d 139 at 151 (7th Cir. 1974). In *Braasch*, the court defined the offense in these terms:

> The use of office to obtain payments is the crux of the statutory requirement of "under color of official right", and appellants' wrongful use of official power was obviously the basis of this extortion. See *United States v. Staszcuk*, 502 F.2d 875 (7th Cir. 1974). It matters not whether the public official induces payments to perform his duties or not to perform his duties, or even, as here, to perform or not to perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951. That such conduct may also constitute "classic bribery" is not a relevant consideration.

This description of the offense has been followed and approved in other circuits [12] and is the definition urged by the government in the instant case.

Such an interpretation of the statute is quite broad in its coverage of activities by public officials. There is no requirement of a threat by the official; thus voluntary payments, commonly considered bribery, would be covered by the statute if solicited by the official.[13] A case where an official sells his power to influence public action, commonly known as influence peddling, would also be covered.[14] The crime could also include the receiving of something of value by a public official because of some official act he has performed or will perform, generally referred to as an illegal gratuity. Surely, in such a case "the motivation for the payment focuses on the recipient's office." In short, whatever meaning the common law attached to extortion, some recent circuit court opinions have given the term a much broader meaning which covers all sorts of political corruption or unethical conduct. This broad interpretation of the statute makes no distinction between corrupt or unlawful activity and certain legitimate activity, such as a campaign contribution.

Thus, if an incumbent candidate solicits campaign funds from individuals who are in a position to directly or indirectly benefit from his official decisions, this activity may be covered by the broad interpretation of the Hobbs Act. The payors in such a case may not make the payments except for the official's position of power, and they more than likely hope to gain some favorable treatment in exchange for their contributions. But do such solicitations constitute extortion? Would the following?:

> A public official solicits a loan from a bank. The loan is made; part of the motivation is the borrower's official position and the hope that the bank can benefit therefrom in the form of otherwise legitimate bank business.

> A mayor solicits from an airline whose local terminal operations are regulated by his city an invitation to participate at no cost to him in a promotional inaugural foreign flight.

---

more favorable to the defendant than required. However, the court was careful to determine that the instructions precluded a conviction based upon the passive receipt of money. *U. S. v. Hyde*, 448 F.2d 815 at 832–33 (5th Cir. 1971) seems to imply that some element of coercion or intimidation must be present for a prosecution under the Hobbs Act, although the coercion may consist of a threat to exert valid official power. On this general subject of bribery vs. extortion *see* Stern, "Prosecutions of Local Political Corruption Under the Hobbs Act: The Unnecessary Distinction Between Bribery and Extortion"; 3 Seton Hall L.Rev. 1 (1971).

**12.** *U. S. v. Trotta*, 525 F.2d 1096, 1100 (2d Cir. 1975); *U. S. v. Hathaway*, 534 F.2d 386 (1st Cir. 1976); *U. S. v. Harding*, 563 F.2d 299 (6th Cir. 1977). See also *U. S. v. Mazzei*, 521 F.2d 639 (3rd Cir. 1975).

**13.** See footnote 6, *supra*.

**14.** See *U. S. v. Mazzei*, 521 F.2d 639 (3rd Cir. 1975). Judge Gibbons' dissent takes issue with such a broad interpretation.

Through his "booking agent", a Congressman, member of a committee which considers bills relating to an industry, solicits a speech-making appearance (with honorarium) before the industry convention.

All of the foregoing would seem to fit the definition suggested by the government.

Congress has adopted a comprehensive scheme for prosecuting federal officials guilty of various types of corrupt activities. 18 U.S.C. § 201(c) deals with accepting bribes and § 201(g) with accepting illegal gratuities.[15] Extortion by federal officials is dealt with in 18 U.S.C. § 872:

> § 872. Extortion by officers or employees of the United States
>
> Whoever, being an officer, or employee of the United States or any department or agency thereof, or representing himself to be or assuming to act as such, under color or pretense of office or employment commits or attempts an act of extortion, shall be fined not more than $5,000 or imprisoned not more than three years, or both; but if the amount so extorted or demanded does not exceed $100, he shall be fined not more than $500

or imprisoned not more than one year, or both.

It is interesting and significant that in all three statutes the U.S. Congress establishes far less severe penalties for federal officials than the Hobbs Act does for even a minor local official engaged in the same conduct, if the Hobbs Act means what the government contends it does. While the extortion provision in the Hobbs Act applies to federal as well as local officials, we have found no reported case involving the prosecution thereunder of a federal official.

The federal employee extortion statute does not define the term extortion. Apparently, prosecutions are rare, especially in recent years. There are few reported cases interpreting the statute; two of which have come to our attention apply inconsistent definitions of extortion. In 1947, the Seventh Circuit interpreted 18 U.S.C. § 171, which for all relevant purposes is the identical predecessor of § 872.[16] The court held that "extortion" in that statute "is used in its common, ordinary sense as distinguished from the sense in which it was known at

---

15. Section 201(c):

(c) Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

(1) being influenced in his performance of any official act; or

(2) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(3) being induced to do or omit to do any act in violation of his official duty;

Shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

Section 201(g):

(g) Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any

official act performed or to be performed by him;

. . . .

Shall be fined not more than $10,000 or imprisoned for not more than two years, or both. The statutory language of Section 201 is not free from ambiguity. For a discussion of the problems of distinguishing among bribery, illegal gratuities and lawful activities see *U. S. v. Brewster*, 165 U.S.App.D.C. 1, 506 F.2d 62 (D.C.Cir.1975).

16. *U. S. v. Sutter*, 160 F.2d 754 (7th Cir. 1947). 18 U.S.C. § 171 provided:

1. "Every officer, clerk, agent, or employee of the United States, and every person representing himself to be or assuming to act as such officer, clerk, agent, or employee, who, under color of his office, clerkship, agency, or employment, or under color of his pretended or assumed office, clerkship, agency, or employment, is guilty of extortion, and every person who shall attempt any act which if performed would make him guilty of extortion, shall be fined not more than $500 or imprisoned not more than one year, or both." (R.S.Sec. 5481; June 28, 1906, c. 3574, 34 Stat. 546; Mar. 4, 1909, c. 321, Sec. 85, 35 Stat. 1104.)

common law." The court held that the statute

> . . . does more than substitute color of office for fear, threats, or pressure. The use of official position must be coupled with extortion. Under this statute, a Federal employee is guilty only if he uses his office to place another under compulsion of fear, force, or the undue exercise of power, so that such person parts with something of value unwillingly and involuntarily.[17]

In an earlier case, the Second Circuit held that Section 171 should be interpreted to adopt the common law definition of extortion:

> Extortion is the unlawful taking by any officer under color of his office of any money or thing of value that is not due him, or more than is due, or before it is due.[18]

This common law definition, it is submitted, by use of the words "unlawful" and "taking" implies the threat of economic loss by virtue of the imposition or withholding of official action and thus distinguishes the more serious crime of extortion from bribery.

In any event, the extortion statute as to federal officials has never been interpreted as broadly as the interpretation of the Hobbs Act as to local officials suggested by the government. It is noteworthy that Congress dealt with federal officials as to bribery, illegal gratuities and extortion in separate sections of Title 18. If Congress meant to include all such activity by local officials under the term "extortion" in the Hobbs Act, the statute could have so specified. Bribes and illegal gratuities can affect interstate commerce as much as extorted payments can. If Congress meant by the last phrase of the Hobbs Act definition, "under color of official right" to include the solicitation of a bribe it would have inserted

"or by solicitation of a bribe" in the statute in lieu of "or under color of official right".

Given the ambiguities of the common law and the absence of clear Congressional intent, the courts have been forced to speculate as to the exact parameters of the offense defined by the Hobbs Act. As a result, public officials are not given fair warning as to whether their activities are criminal or not.

One of the primary and most serious problems with vague statutes is that they encourage arbitrary arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Such laws place undue discretion in the hand of the police and the prosecutor.

The court is convinced that the Hobbs Act, when employed to prosecute the "obtaining of property from another, with his consent, (induced) . . . under color of official right" presents just such a problem. Under the words of this statute, whether one is prosecuted and convicted or not may ultimately depend not upon one's conduct, but upon one's popularity, political affiliation, influence, and even personality. Potential abuse and erratic verdicts are inherent in the ambiguities of this statute. Examples have already been given of public official conduct apparently covered by the words of the statute, but never prosecuted.

We recognize that decisions in some other circuits interpret the pertinent part of the Hobbs Act extortion definition as does the government. Under these decisions, the court's charge would be proper, the statute would be held Constitutional, and the conviction would stand.[19] However, we have found no such decision in this Circuit or by the U.S. Supreme Court, nor has the government. Other cases lend support for our conclusion as to the meaning of the

---

**17.** 160 F.2d at 756.

**18.** *Martin v. U. S.*, 278 F. 913 at 917 (2nd Cir. 1922).

**19.** *U. S. v. Kenny*, 462 F.2d 1205 (3rd Cir. 1972); *U. S. v. Braasch*, 505 F.2d 139 (7th Cir. 1974); *U. S. v. Kuta*, 518 F.2d 947 (7th Cir. 1975); *U. S. v. Mazzei*, 521 F.2d 639 (3rd Cir. 1975); *U. S. v. Trotta*, 525 F.2d 1096 (2nd Cir. 1975); *U. S. v. Hall*, 536 F.2d 313 (10th Cir. 1976); *U. S. v. Harding*, 563 F.2d 299 (6th Cir. 1977).

definition, if it is constitutional.[20] In the one Fifth Circuit decision which deals with issues similar to those here, Judge Wisdom distinguishes between extortion and bribery, extortion involving an element not necessary to bribery, i. e., duress or threat of harm:

> It is the wrongful use of an otherwise valid power that converts dutiful action into extortion. If the purpose and effect are to intimidate others, forcing them to pay, the action constitutes extortion. Put another way, it is the right to impartial determination of the issue on the merits (i. e. whether to enforce the law or whether to picket or strike) that the victim is deprived of when these actions are taken for the purpose of coercing him into paying. The distinction from bribery is therefore the initiative and purpose on the part of the official and the fear and lack of voluntariness on the part of the victim.[21]

■ Applying the distinction in *Hyde* between extortion and bribery we hold that if the pertinent part of the definition of extortion in the Hobbs Act is constitutional, it does not cover solicitation by a public official of a bribe or of a gratuity, absent the element of threat or duress.

Nothing herein should be construed to condone the activities of defendant or the other participants. Their actions were highly unethical and reprehensible. That the evidence may support state bribery charges against them is not the issue before us. That the resolution of the issues we must decide may result in these activities going unpunished is unfortunate but irrelevant.[22] However high their motives may be, government prosecutors should not be permitted, in order to suppress a perceived modern evil, to give to an ancient statute a new interpretation never intended by the Congress.[23]

## APPENDIX

### INDICTMENT

The Grand Jury charges that:

AT ALL TIMES HEREIN:

1. HENRY E. WILLIAMS was a member of the Jefferson Parish School Board, an elective office in Jefferson Parish, Louisiana.

2. Louisiana Computing Corporation was a corporation, incorporated under the laws of the State of Louisiana, under contract to the Jefferson Parish School Board to provide computer services. On July 7, 1976, HENRY E. WILLIAMS, seconded a motion for renewal of the Jefferson Parish School Board contract with Louisiana Computing Corporation.

### COUNT 1

On or about April 1, 1976, in the Eastern District of Louisiana, HENRY E. WILLIAMS, while serving as a member of the Jefferson Parish School Board, an elective office in the State of Louisiana, did knowingly, willfully and unlawfully attempt to and did obstruct, delay and affect interstate commerce as that term is defined in United States Code, Section 1951(b)(3), by means of extortion, in that the defendant did unlawfully seek, ask, solicit and receive, under the color of official right, the sum of $4,000 cash from a contractor doing business with the Jefferson Parish School Board, which money was not due him or his office and to

---

**20.** *U. S. v. Hyde*, 448 F.2d 815 (5th Cir. 1971); *U. S. v. Addonizio*, 451 F.2d 49 (3rd Cir. 1972); *U. S. v. Hathaway*, 534 F.2d 316 (1st Cir. 1976).

**21.** *U. S. v. Hyde*, 448 F.2d 815 at 833 (5th Cir. 1971).

**22.** The words of Judge Rubin in a case decided after this order was issued but before publication of this opinion, *U. S. v. McInnis*, 601 F.2d 1319 at 1327 (5th Cir. 1979), are particularly pertinent:

> There is still truth in ancient wisdom and law in maxims older than, but respected by, the Constitution. Criminal statutes are to be strictly construed. Penal statutes must not be stretched to enable the government to prosecute a defendant merely because what he has done is vile, or, as the government here suggests, a violation of state law that is likely to go unpunished by state authorities (citations omitted).

**23.** *See* 3 Seton Hall L.Rev. 1 urging just such a course of action.

which neither he nor his office was entitled, from a contractor with the Jefferson Parish School Board; all in violation of Title 18, United States Code, Section 1951.

## COUNT 2

From on or about June, 1976, until on or about October, 1976, in the Eastern District of Louisiana, HENRY E. WILLIAMS, while serving as a member of the Jefferson Parish School Board, an elective office in the State of Louisiana, did knowingly, willfully and unlawfully attempt to and did delay and affect interstate commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), by means of extortion, in that defendant did unlawfully seek, ask, solicit and receive from a former official of Louisiana Computing Corporation, under color of official right, the sum of approximately $13,000 cash, generated by the payments of fictitious bonuses to

employees of Louisiana Computing Corporation, which money was not due Williams or his office, and to which neither he nor his office was entitled; all in violation of Title 18, United States Code, Section 1951.

## COUNT 3

From on or about June 19, 1975, until on or about October 31, 1976, in the Eastern District of Louisiana, HENRY E. WILLIAMS, while serving as a member of the Jefferson Parish School Board, an elective office in the State of Louisiana, did knowingly, willfully and unlawfully attempt to and did delay and affect interstate commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), by means of extortion, in that defendant did unlawfully seek, ask, solicit and receive from Louisiana Computing Corporation, under color of official right, airline tickets valued at approximately $1,209.46 as follows:

| DATE OF TICKET PURCHASE | DESTINATION | PASSENGER | AMOUNT | APPROXIMATE DATE OF FLIGHT/RETURN |
|---|---|---|---|---|
| (1)  6/19/75 | Las Vegas | Mr. Henry E. Williams | $338.73 | 6/26/75 6/30/75 (return) |
| 6/19/75 | Las Vegas | Mrs. Henry E. Williams | 338.73 | 6/26/75 6/30/78* (return) |

*(Memo by District Court: The return date of 6/30/78 is obviously a typographical error, the correct date is 6/30/75)

| | | | | |
|---|---|---|---|---|
| (2)  6/23/76 | Las Vegas | Mr. Henry E. Williams | 264.00 | 6/24/76 6/26/76 (return) |
| (3)  10/26/76 | Las Vegas | Mr. Henry E. Williams | 268.00 | 10/28/76 10/31/76 (return) |

paid for by Louisiana Computing Corporation which tickets were not due Williams or his office, and to which neither he nor his office was entitled; all in violation of Title 18, United States Code, Section 1951.

## CHARGE TO JURY

What does the law mean when it prohibits and makes it criminal for a public official to obtain something of value induced by color of official right? This is, of course, unusual language, language which we don't use in our everyday lives, and therefore requires special explanation.

To induce an act means to influence or persuade it to be done, to bring something

about, to cause it to happen. By color of official right means as a result of one's official position. But more is needed before conduct is criminal, than merely the act of a public official obtaining something by persuading someone to give it to him because he is a public official; otherwise, every time an incumbent public official runs for reelection and solicits campaign contributions he would be guilty of a crime under this statute. What is the additional element? There must be proof that the defendant wrongfully used his official power to obtain something to which he was not entitled. The government must prove that the public official persuaded someone to give him

something of value by indicating, either expressly or impliedly, either at that time or previously, that as a result, the public official would favor him in his official capacity. It is not enough for the giver alone to think that he'll get some favor from the public official; the public official must have indicated that to him as part of the inducement for the act.

As applied to this case, the defendant would be guilty if you find as to the acts covered by any count of the indictment that the government has proved beyond a reasonable doubt that Henry Williams did all of the following:

persuaded or influenced someone to pay him money (as to count one or two) or furnished him airline tickets (as to count three)

because he was a public official at the time

and indicated to the person whom he persuaded or influenced either by Williams' words or actions, either at the time of the payment of money or furnishing of airline tickets or previous thereto, that as a result of the giving of money or furnishing of airline tickets, he, Williams, in his official capacity as a school board member would favor that person.

For defendant's activities involved in this case to be covered under this statute, you must be convinced beyond reasonable doubt that Mr. Williams obtained money or airline tickets and that the act of giving the money or furnishing the airline tickets was brought about or caused by Henry Williams leading Brandin (with respect to Count One) or Louisiana Computer Corporation (with respect to Counts 2 or 3) to believe that if they gave him money or airline tickets, Williams in his capacity as a school board member would favor the giver.

To prove the crime charged in this case, the government need not prove that the payments to the defendant were the result of force or coercion on his part or from fear on the part of the giver.

It is not necessary that the defendant as a School Board member have the power and authority to perform the acts he claimed, but whether it is reasonable, looking at all the surrounding circumstances, for the subject to believe that the defendant had that authority or power.